John B. CURLEY, as Chairman of the Lake County, Indiana, Republican Central Committee, and as a Registered Voter; and Jim B. Brown, as a Member of the Lake County Board of Elections and Registration, and as a Registered Voter, Appellants–Plaintiffs,

v.

LAKE COUNTY BOARD OF ELECTIONS AND REGISTRATION; and The Honorable Thomas Philpot, not individually but as Lake County Clerk, Appellees–Defendants,

and

Linda Peterson; Roosevelt Phillips; Mary Aaron; Service Employees International Union; and Indiana State Conference of National Association for The Advancement of Colored People Branches, Appellees–Defendants–Intervenors,

and

United Steelworkers District 7; Hammond Teachers Federation, Local 394, American Federation of Teachers; Earline Rogers; and Roxanna Lugo, Appellees–Plaintiffs.

and

Lake County Board of Elections and Registration, Appellee–Defendant.

No. 45A03–0810–CV–512.

Court of Appeals of Indiana.

Oct. 31, 2008.

Karl L. Mulvaney, Nana Quay–Smith, Shannon D. Landreth, Briana L. Kovac, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants.

Frederick T. Work, Frederick T. Work & Associates, Gary, Ivan E. Bodensteiner, Professor of Law, Valparaiso University School of Law, Valparaiso, IN, Jonathan Weissglass, Stephen P. Berzon, Danielle Leonard, Anne Arkush, Altshuler Berzon LLP, San Francisco, CA, James L. Wieser, Wieser & Wyllie, Schererville, Barry A. Macey, Macey Swanson and Allman, Indianapolis, IN, Sean H. Donahue, Donahue & Goldberg, LLP, Washington, DC, Attorneys for Appellees.

Steve Carter, Attorney General, Thomas M. Fisher, Solicitor General, Heather L. Hagan, Deputy Attorney General, Office of the Attorney General, Indianapolis, IN, Attorneys for Amicus Curiae.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

John B. Curley and Jim B. Brown (collectively, "the Curley Plaintiffs")[1] bring this interlocutory appeal[2] from the trial court's preliminary injunction ("Preliminary Injunction") enjoining the Lake County Board of Elections and Registration (the "Board" or "Board of Elections") from terminating early voting for the 2008 General Election in Gary, Hammond, and East Chicago. The Curley Plaintiffs, the Appellees, and the State as amicus curiae raise numerous issues for our review, including issues under Indiana's Constitution, the Voting Rights Act, and the Constitution of the United States.[3] But this

---

1. The Curley Plaintiffs were not the only plaintiffs in the trial court, but they are the only appellants. Accordingly, and for the sake of brevity, we refer to all other parties collectively as "the Appellees" regardless of their position in the trial court. We also hold that the Curley Plaintiffs have standing to bring this action and appeal under Indiana Code Section 3–6–5.2–9.

2. This appeal is a matter of right under Indiana Appellate Rule 14(A)(5). On October 24, 2008, our Supreme Court declined to accept jurisdiction, stating that "[j]urisdiction, to the extent it lies in this appeal, lies with the Court of Appeals." See October 24, 2008, Order of the Supreme Court at 1. This court then ordered an expedited briefing schedule. We held oral argument on October 30, 2008. Attorney Karl L. Mulvaney presented the arguments of the Curley Plaintiffs, and attorneys Ivan E. Bodensteiner and Jonathan Weissglass presented the arguments of the Appellees.

3. It is not necessary for this court to address any constitutional issues in order to decide this appeal. We therefore do not undertake such tasks:

> Our Supreme Court has repeatedly held that it "will not decide constitutional questions when the case under consideration can be concluded upon other grounds[.]" State v. Pearson Constr. Co., 236 Ind. 602, 141 N.E.2d 448, 450 (Ind.1957). "It is long established that a constitutional question unnecessary to a determination of the merits should not be decided." Bureau of Motor Vehicles v. Scott, 497 N.E.2d 557, 559 (Ind.1986). "Both state and federal courts traditionally foreswear deciding a constitutional question unless no non-constitutional grounds present themselves for resolving the case under consideration." Citizens Nat'l Bank of Evansville v. Foster, 668 N.E.2d 1236, 1241 (Ind.1996).

State v. Brown, 840 N.E.2d 411, 414 (Ind.Ct. App.2006).

challenge to early voting—legally described as "in-person absentee voting"—presents the court, primarily, with a question of statutory interpretation.[4]

The trial judge issued a thorough order addressing a wide range of issues related to early voting that the parties have briefed and argued well on appeal. We conclude, however, that it is unnecessary to address all the claims and defenses asserted before the trial court and this court in order to decide this case.[5] In addressing the broad issue of whether the Board showed by a preponderance of the evidence that it met the four requirements for the issuance of a preliminary injunction, we focus on two questions of law:

1. Whether in-person absentee voting locations at offices of the circuit court clerk are "satellite offices" for purposes of Indiana Code Sections 3–11–10–26 and 3–11–10–26.3; and

2. Whether Indiana Code Section 3–11–10–26(a)(1) requires the Board to hold in-person absentee voting only in the Board's office.

We hold that the trial court's order was not clearly erroneous when the court determined that offices of the circuit court clerk are not "satellite offices" and that Indiana Code Section 3–11–10–26(a)(1) does not restrict the authority of the Board of Elections to conduct in-person absentee voting in the offices of the circuit court clerk. Thus, we affirm the Preliminary Injunction.

## FACTS AND PROCEDURAL HISTORY

This case comes to us after hearings in four different northern Indiana state and federal courts, where the parties have litigated for and against an injunction to maintain the status quo and prohibit the Board of Elections from terminating in-person absentee voting in the offices of the circuit court clerk in Gary, Hammond, and East Chicago, now underway, and for and against an injunction to terminate in-person voting at those sites. On October 14, 2008, our Supreme Court issued an order consolidating the cases pending in the Lake Circuit Court and the Lake Superior Court into the superior court. In doing so, the court ordered that "[t]he October 14 preliminary injunction entered by the [Lake] Circuit Court shall remain in effect pending action, if any, by the [Lake] Superior Court." *See* Appellant's App. at 31–

---

4. This is not a case about voter fraud. Indiana has adequate protections in place to prevent voter fraud at the polls. *See* Ind.Code § 3–11–8–25.1 (2008); *see also Crawford v. Marion County Election Bd.*, —— U.S. ——, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (upholding Indiana's voter identification law against a facial challenge to its constitutionality). Indeed, the trial court here explicitly found that "[t]here has been no evidence of any voter fraud during the period of early voting at any of the four (4) early voting locations operating for the 2008 General Election." Appellant's App. at 41.

5. The Curley Plaintiffs urge us to exercise our authority under Appellate Rule 66(C)(6) to order entry of final judgment. While the record has been fully developed in the trial court, and the case has been briefed and argued on

appeal, we decline that invitation. We believe the better course is for the parties to present their arguments to the trial court and for the trial court to enter its final judgment interpreting the relevant statutes. As the Board of Elections states in its brief:

> The ruling before the Court is a denial of a motion for [a] preliminary injunction, on[e] reached after expedited and necessarily truncated proceedings. This appeal was briefed under a schedule proposed by Curley Plaintiffs that afforded appellees 48 hours to file responsive briefs (and provides for no reply brief). These are peculiarly inappropriate conditions for a Court to reach beyond the matter before it—assuming that is ever appropriate.

Board of Election's Brief at 38–39.

32. On October 15, our Supreme Court appointed a special judge after the parties could not agree on a judge. On October 20, the trial court heard evidence presented by the parties and visited the three voting locations in dispute. On October 22, the trial court issued its Preliminary Injunction prohibiting the Board of Elections from ceasing the disputed in-person absentee voting.

In its Preliminary Injunction, the trial court specially found the following undisputed facts:

2. John B. Curley is Chairman of the Lake County Indiana Republican Central Committee and a registered voter in Lake County, Indiana.

3. Jim B. Brown is a member of the Lake County Board of Elections and Registration and a registered voter in Lake County, Indiana.

* * *

5. The Board of Elections consists of five (5) members: two (2) member[s] appointed by each Chairman of each major political party, and the Circuit Court Clerk as an ex officio member.

6. The following individuals are current members of the Board of Elections: Al Salinas and John McCloud, as appointees of the Lake County Democratic Chairman; Jim B. Brown and Patrick E. Gabrione[,] as appointees of the Lake County Republican Chairman; and Thomas R. Philpot, County Clerk, as an Ex–Officio member.

* * *

10. The state trial courts in Lake County, Indiana[,] are unique in their configuration, with a Circuit Court and a Superior Court and numerous judicial officers in various geographic locations. These courts sit in four (4) separate courthouse locations; namely, Gary, Hammond, East Chicago, and [at the county seat in] Crown Point.

11. These four (4) courthouse locations afford Lake County citizens to file many of their cases in the city of their residence.

12. The County Clerk maintains offices in each of the four (4) courthouse locations.

* * *

15. In addition to voting in person at a polling place on Election Day, there are three (3) alternate provisions under Indiana law for a registered voter to cast a ballot in the 2008 General Election:

(A) voting an absentee ballot by mail[;]

(B) voting an absentee ballot in person[;]

(C) voting by traveling board[.]

Ind.Code § 3–11–10 et seq.

16. On September 23, 2008[,] a meeting of the Board of Elections was held in the Commissioners Court Room at the Lake County Government Center in Crown Point, Indiana.

17. The following members of the Board of Elections were present at that meeting: Al Salinas, John McCloud, Jim B. Brown, Patrick E. Gabrione and Sandy Radoja as proxy for the County Clerk.

18. Prior to the Board of Elections['] September 23, 2008[,] meeting, an agenda for that meeting was published.

19. Under the "NEW BUSINESS" portion of the agenda was listed "ABSENTEE–IN PERSON VOTING–SATELLITE OFFICES."

20. During the September 23, 2008[,] meeting of the Board of Elections the following occurred:

A. Mr. Salinas moved to adopt a resolution [6] to authorize the County Clerk to establish satellite offices in Gary, Hammond, and East Chicago and Mr. McCloud seconded the motion. The vote on the motion resulted in Mr. Salinas, Mr. McCloud and Mrs. Radoja voting in favor of the motion and Mr. Brown and Mr. Gabrione voting against the motion. There not being a unanimous vote in favor of the resolution, the motion was defeated.

B. There was much discussion and disagreement among those present as to the proper interpretation of the statutes applicable to early voting and when a unanimous vote was required to establish early voting.

C. Mr. Salinas made a second motion to permit early voting at the offices of the Circuit Court Clerk, all locations.[7] The vote on the motion resulted in Mr. Salinas, Mr. McCloud and Mrs. Radoja voting in favor of the motion and Mr. Brown and Mr. Gabrione voting against the motion.

D. The second motion stated the locations for early voting but did not state the hours during which early voting would take place.

E. Mr. Gillion (sic), the attorney advising the Democratic members of the Board, took the position that a unanimous vote was not required. Mr. Lambka, the attorney advising the Republican members of the Board, took the position that a unanimous vote was required.

21. Any member of the Board of Elections as well as any other interested party had the opportunity to communicate an opinion in support of or against the establishment of early voting sites for the 2008 General Election.

\* \* \*

23. During the September 23, 2008[,] meeting, the Board of Elections received no testimony or communications opposing the establishment of early voting sites for the 2008 General Election.

24. Jim B. Brown and Patrick E. Gabrione . . . refused to articulate a reason for their dissent in voting against each of the two (2) motions relating to early voting for the 2008 General Election.

25. [Curley and Brown] had the opportunity to advance a proposal to the Board of Elections to establish early voting in other locations in Lake County including locations where predominantly Republican voters reside.

26. Neither John B. Curley nor Jim B. Brown nor Patrick E. Gabrione advanced any proposal to the Board of Elections to establish early voting in other locations in Lake County in addition to those proposed for the cities of Gary, Hammond, and East Chicago.

27. After the September 23, 2008[,] meeting of the Board of Elections . . . Curley[ ] issued a Press Release which read as follows:

> Despite my efforts the Lake County Board has apparently voted to **usurp** the Indiana state law and over-ride the Republican votes illegally placing satellite voting in clerk's offices in *selected* locations in north Lake County. Sites included were **Gary, East Chicago** and **Hammond.**

---

6. As discussed below, this motion was made pursuant to Indiana Code Section 3–11–10–26(a)(2).

7. As discussed below, this motion was made pursuant to Indiana Code Section 3–11–10–26(a)(1).

South Lake County was left without these early voting locations. Winfield with 1600 voters going to one location was left out. Munster, Dyer and Schererville who have persons displaced by recent flooding were left out. Many long distance commuters in Lowell and Crown Point have limited voting time but were left out.

**If you are going to allow satellites for one you must do it for all! I represent the entire county and resent this move.**

28. The Board of Elections provided the opportunity for early voting before the 2008 Primary Election Day at four locations: Gary, Hammond, East Chicago, and Crown Point.

\* \* \*

32. Early voting began in Crown Point on October 6, 2008.

33. Early voting began in Gary, Hammond, and East Chicago on October 14, 2008.

34. Sally LaSota is the Director [of] the Board of Elections.

35. Mrs. LaSota testified [that] identical voting procedures were being used at each of the four (4) early voting locations. . . .

36. Mrs. LaSota also testified that Indiana's photo identification requirement for in person absentee voting and voting at the polls is the strictest voting requirement in all 50 states.

37. Mrs. LaSota also testified to the following:

A. Infinity voting machines are currently being used for early voting at all four (4) early voting locations.

B. A dramatic increase in the number of new voter registrations for the 2008 General Election.

C. The number of votes cast in Lake County during the 2008 Primary Election was unusually high.

D. It is expected that the number of votes cast in Lake County during the 2008 General Election will by very high.

E. There has been a high interest among the electorate in early voting. In the four (4) day period from October 14 through October 17, there were 1,773 votes cast in all four (4) early voting locations. Since October 6, there have been an approximate grand total of 3,000 in person absentee ballots cast.

F. The ballot in most cities and towns in Lake County for the 2008 General Election is very large, consisting of 6 pages on the electronic voting machine being utilized.

G. State law requires a "Two (2) Minute Rule" which allows a voter only two (2) minutes in the voting booth within which to cast a ballot.

H. Early voting will help alleviate the anticipated long lines at the polls on 2008 General Election Day and the long wait [for] voters[.]

I. Early voting in Lake County will serve to help facilitate and expedite the counting of votes after the polls close.

J. She favored the Board providing for early voting in as many locations in Lake County as possible. She stated that "ten would be good."

K. She indicated that there were funds and personnel available to establish early voting locations in addition to those in Gary, Hammond, East Chicago, and Crown Point and that her office could immediately establish them.

38. The high number of registered voters, the length of the ballot, the "Two

(2) Minute Rule," and the greater interest of the electorate in an election cycle including a presidential election, will all combine to make voting on November 4, 2008, the 2008 General Election Day ..., somewhat cumbersome for voters who probably will experience long lines at the polls and a short time period to cast their ballots.

* * *

42. Curley Plaintiffs argue that fraud is one of the considerations for opposition to early voting in the northern part of Lake County.

43. Regrettably, Lake County has had a history of public corruption and voter fraud.

44. The Indiana Supreme Court issued an extraordinary ruling when it found massive voter fraud and overturned the results of the May 6, 2003[,] Primary Election to determine the Democratic nominee for mayor of East Chicago, Indiana. *Pabey v. Pastrick*, 816 N.E.2d 1138 (Ind.2004).

45. The voter fraud in *Pabey* involved absentee voting by mail.

* * *

50. However, current voting procedures, including the requirement of photo identification, reduces the likelihood of fraud during early voting when that voting is conducted by in person absentee ballot.

* * *

54. There has been no evidence of any voter fraud during the period of early voting at any of the four (4) early voting locations operating for the 2008 General Election.

* * *

59. The Indiana Bipartisan Task Force on Election Integrity was created in the wake of the 2000 elections. That Task Force conducted a comprehensive review of the [S]tate's election procedures and explained the need for in person early voting. It found that early voting is most helpful to those whose work or family obligations are such, because they work long shifts, or two jobs, or have sick or disabled children or parents, that they have difficulty voting on election day.

60. Lake County does not have the availability of public transportation to many of its residents. The location and infrequency of the public transportation options available would make it difficult if not impossible for most Lake County residents to travel to Crown Point to avail themselves of early voting at the Board of Elections.

61. Even if residents had the ability to ride in their own vehicle or that of a relative, friend, or neighbor, travel to and from Crown Point from the cities of Gary, Hammond, and East Chicago involves a great deal of time and often requires a circuitous route of travel.

62. There is a high probability that if early voting locations did not exist in the cities of Gary, Hammond, and East Chicago, many residents of those cities would not vote.

63. If early voting was not offered in the cities of Gary, Hammond, and East Chicago, the voters in those communities would be the only voters in Indiana who would not be able to vote at a courthouse located in their city of residence.

* * *

68. Curley Plaintiffs have provided the court with no evidence that they

have been harmed in any way by this ongoing voting.

Appellant's App. at 32–43 (footnotes and citations to the record omitted). The court then denied the Curley Plaintiffs' request for an injunction and, at the same time, enjoined the Board of Elections "from terminating the operation of in[-]person absentee voting currently being conducted in the offices of the Clerk of the Lake Circuit Court in the courthouse buildings in Gary, Hammond, and East Chicago. . . ." *Id.* at 51. This appeal ensued in due course.

## DISCUSSION AND DECISION

### Standard of Review

The Curley Plaintiffs appeal from the trial court's Preliminary Injunction, which prohibits the Board of Elections from terminating in-person absentee voting for the 2008 General Election at the circuit court clerk's offices in Gary, Hammond, and East Chicago. As required by Indiana Trial Rule 52, the trial court here entered thorough findings of fact and conclusions thereon after hearing evidence. Our standard of review is clear:

> when reviewing findings of fact and conclusions of law entered upon the denial of a motion for preliminary injunction pursuant to Trial Rule 52(A)(1), we must determine if the trial court's findings support its judgment and will reverse the judgment only when clearly erroneous. *Oxford Fin'l Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1141 (Ind.Ct.App. 2003). Findings of fact are clearly erroneous only when the record lacks any evidence or reasonable inferences therefrom to support them. *U.S. Land Servs., Inc. v. U.S. Surveyor, Inc.,* 826 N.E.2d 49, 62 (Ind.Ct.App.2005). The trial court's judgment is clearly erroneous only if it is unsupported by the findings and the conclusions that rely upon those findings. *N. Elec. Co., Inc.*

> *v. Torma,* 819 N.E.2d 417, 421 (Ind.Ct. App.2004). We may neither reweigh the evidence nor reassess witness credibility. *Oxford Fin'l,* 795 N.E.2d at 1141. Additionally, even an erroneous finding is not fatal to a trial court's judgment if the remaining valid findings and conclusions support the judgment, rendering the erroneous finding superfluous and harmless as a matter of law. *Lakes & Rivers Transfer v. Rudolph Robinson Steel Co.,* 795 N.E.2d 1126, 1132 (Ind.Ct. App.2003).

> Furthermore, [the Appellants are] appealing from a negative judgment and must, therefore, establish that the trial court's judgment is contrary to law. *N. Elec. Co.,* 819 N.E.2d at 421. A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.* We review conclusions of law de novo and give no deference to the trial court's determinations about such questions. *Id.* at 422.

*M.K. Plastics Corp. v. Rossi,* 838 N.E.2d 1068, 1074–75 (Ind.Ct.App.2005).

Here, the Curley Plaintiffs had requested the trial court to issue a preliminary injunction to prevent the Board of Elections from continuing in-person absentee voting at the offices of the circuit court clerk in Gary, Hammond, and East Chicago. To obtain a preliminary injunction, they had the burden of showing by a preponderance of the evidence that: (1) their remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) they had at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to them outweighed the potential harm to the Appellees resulting from the granting of an in-

junction; and (4) the public interest would not be disserved by the granting of a preliminary injunction. *See Apple Glen Crossing, L.L.C. v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487–88 (Ind.2003); *Union Twp. Sch. Corp. v. State ex rel. Joyce*, 706 N.E.2d 183, 189 (Ind.Ct.App. 1999), *trans. denied.* If the party moving for an injunction fails to prove any of those four requirements, a grant of an injunction to that party is an abuse of discretion. *See Apple Glen Crossing*, 784 N.E.2d at 487–88. Stated another way, if, on appeal, the moving party cannot demonstrate that it proved each of those four requirements then the trial court's denial of the movant's request for an injunction must be affirmed. *See id.; see, e.g., Ind. Family & Soc. Servs. Admin. v. Ace Foster Care & Pediatric Home Nursing Agency*, 823 N.E.2d 1199, 1203–05 (Ind.Ct.App.2005).

The Appellees also sought, and received, an injunction. Hence, to reverse the trial court's decision in favor of the Appellees, the Curley Plaintiffs must demonstrate that the Appellees failed to prove at least one of the four requirements for a preliminary injunction. *See Apple Glen Crossing*, 784 N.E.2d at 487–88. On appeal, the Curley Plaintiffs contend only that the Appellees failed to demonstrate a reasonable likelihood of success on the merits because the Board acted unlawfully when it authorized the in-person absentee voting at the circuit court clerk's offices in Gary, Hammond, and East Chicago. Since that argument is identical to the Curley Plaintiffs' reasoning for why the court erred in denying their request for a preliminary injunction, we consolidate the two issues in our review.

■■■ Critical to the Curley Plaintiffs' position on appeal is their allegation that the Board clearly violated Indiana law by opening the disputed in-person absentee voting locations. More specifically, the Curley Plaintiffs assert that the Board of Elections' decision to open in-person absentee voting sites at the offices of the circuit court clerk in Gary, Hammond, and East Chicago violates Indiana Code Sections 3–11–10–26(a)(2) and 3–11–10–26.3. "[W]hen the acts sought to be enjoined are unlawful, the plaintiff need not make a showing of irreparable harm or a balance of hardship in his favor." *Sadler v. State ex rel. Sanders*, 811 N.E.2d 936, 953 (Ind. Ct.App.2004).

■■■ The rule relied on by the Curley Plaintiffs is known as the "per se rule":

The elimination of two prongs eases the burden on the party seeking the injunction. When the per se rule is invoked, the court has determined that the defendant's actions have violated a statute and, thus, that the public interest is so great that the injunction should issue regardless of whether the plaintiff has actually incurred irreparable harm or whether the plaintiff will suffer greater injury than the defendant. Accordingly, *invocation of the rule is only proper when it is clear that the statute has been violated.*

*Id.* (quoting *Joyce*, 706 N.E.2d at 192) (emphasis added). Thus, when the per se rule applies, it can satisfy the requirements to obtain a preliminary injunction. But, even when the rule does apply, it does not trump the equitable nature of preliminary injunctions. Rather, the per se rule is "used to enjoin activity that is clearly unlawful and against the public interest." *Ind. Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 162 (Ind.2002) (emphasis added). "An injunction is to be denied if the public interest would be substantially adversely affected, even if the plaintiff has a claim." *State ex rel. Att'y Gen. v. Lake Superior Court*, 820 N.E.2d 1240, 1256 (Ind.2005). We emphasize this point because, as discussed below, even if

the Curley Plaintiffs are ultimately successful on the merits in their interpretation of Indiana's early voting laws, we still must affirm the preliminary injunction because the public interest weighs so heavily in favor of the Board's decision. *See Brown v. Grzeskowiak,* 230 Ind. 110, 130, 101 N.E.2d 639, 647 (1951).

### Indiana's Early Voting Laws and Rules of Statutory Construction

At the heart of this appeal is the interpretation and application of Indiana Code Sections 3–11–10–26 ("Section 26") and 3–11–10–26.3 ("Section 26.3"). Section 26(a) provides:

> (a) As an alternative to voting by mail, a voter is entitled to cast an absentee ballot before an absentee voter board:
>
> > (1) in the office of the circuit court clerk (or board of elections and registration in a county subject to IC 3–6–5.2); or
> >
> > (2) at a satellite office established under section 26.3 of this chapter.

And Section 26.3 states:

> (a) A county election board may adopt a resolution to authorize the circuit court clerk to establish satellite offices in the county where voters may cast absentee ballots before an absentee voter board.
>
> (b) To be adopted under this section, a resolution must be adopted by the unanimous vote of the board's entire membership.
>
> (c) A resolution adopted under this section must do the following:
>
> > (1) State the locations of the satellite offices.
> >
> > (2) State the hours at which absentee voting may occur at the satellite offices.
>
> (d) The resolution may contain other provisions the board considers useful.

> (e) If a resolution is adopted under this section, the procedure for casting an absentee ballot at a satellite office must, except as provided in this section, be substantially the same as the procedure for casting an absentee ballot in the office of the circuit court clerk.

■ Statutory interpretation is a question of law and is reviewed de novo, or without deference to the trial court's interpretation. *See, e.g., Ind. Dep't of Envtl. Mgmt. v. Boone County Res. Recovery Sys.,* 803 N.E.2d 267, 273 (Ind.Ct.App. 2004), *trans. denied.* As our Supreme Court has stated:

> When interpreting a statute, appellate courts independently review a statute's meaning and apply it to the facts of the case under review. If a statute is unambiguous, that is, susceptible to but one meaning, we must give the statute its clear and plain meaning. If a statute is susceptible to multiple interpretations, however, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results.

*State v. Evans,* 810 N.E.2d 335, 337 (Ind. 2004) (quoting *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind.2002)). And, in interpreting Indiana's election laws, we respect the franchise:

> In the absence of fraud, election statutes generally will be liberally construed to guarantee to the elector an opportunity to freely cast his ballot, to prevent his disenfranchisement, and to uphold the will of the electorate.

*Grzeskowiak,* 230 Ind. at 128, 101 N.E.2d at 646.

## I: Irreparable Harm and Balance of Harms

With respect to the first and third prongs of the preliminary injunction standard of review, the Curley Plaintiffs cannot prevail. The trial court found that "[t]he Curley Plaintiffs have provided the court with no evidence that they have been harmed in any way by this ongoing [early] voting." Appellants' App. at 43. On appeal, the Curley Plaintiffs do not challenge that finding, nor do they allege that their remedies at law are inadequate. Accordingly, the issue of whether the Curley Plaintiffs satisfied the first prong is waived.

The trial court also found that the Board as well as voters would suffer significant harm if early in-person absentee voting were discontinued in Gary, Hammond, and East Chicago. In particular, the trial court found:

38. The high number of registered voters, the length of the ballot, the "Two (2) Minute Rule," and the greater interest of the electorate in an election cycle including a presidential election, will all combine to make voting on November 4, 2008, the 2008 General Election Day ..., somewhat cumbersome for voters who probably will experience long lines at the polls and a short time period to cast their ballots.

\* \* \*

59.... It found that early voting is most helpful to those whose work or family obligations are such, because they work long shifts, or two jobs, or have sick or disabled children or parents, that they have difficulty voting on election day.

\* \* \*

62. There is a high probability that if early voting locations did not exist in the cities of Gary, Hammond, and East Chicago, many residents of those cities would not vote.

63. If early voting was not offered in the cities of Gary, Hammond, and East Chicago, the voters in those communities would be the only voters in Indiana who would not be able to vote at a courthouse located in their city of residence.

*Id.* at 39, 42. And to the extent that early voting facilitates voting on Election Day, early voting is for the benefit of both the voters and the Board. Thus, the trial court found that the threatened injury to the Appellees outweighs the potential harm to the Curley Plaintiffs. Indeed, the evidence supports the trial court's findings on this issue. And, again, the Curley Plaintiffs do not challenge these findings on appeal.

## II: Likelihood of Success on the Merits

As noted above, the Curley Plaintiffs' arguments in favor of their injunctive request and against the Appellees' injunctive request is the same argument: that the Board acted unlawfully. On that basis, the Curley Plaintiffs assert that they are likely to succeed on the merits of their claim and that the Appellees are not. Specifically, the Curley Plaintiffs contend that the trial court erred in granting the preliminary injunction for each of the following reasons: (1) the Board of Elections violated Indiana Code Section 3–11–10–26.3 by establishing "satellite offices" in Gary, Hammond, and East Chicago without a unanimous vote; (2) the trial court erroneously "redefine[d] 'circuit court' to mean both the single office of the circuit court clerk [located in Crown Point] and all the offices of the superior court clerks [located at the courthouses in Gary, Hammond, and East Chicago]," Appellant's Brief at 30; and (3)

the Board of Elections violated Section 26(a)(1) by not limiting in-person absentee voting to the Board's office in Crown Point. We address each argument in turn.

**"Satellite Offices"**

In order to negate the trial court's conclusion that the Appellees established a likelihood of success on the merits, the Curley Plaintiffs must show that the Board of Elections clearly violated Indiana's election laws when it opened the in-person absentee voting sites at the offices of the circuit court clerk in Gary, Hammond, and East Chicago. As such, the Curley Plaintiffs first argue that those voting locations are "satellite offices" within the meaning of Section 26(a), and therefore that a unanimous vote of the Board of Elections was required to open those voting sites under Section 26.3(b). We cannot agree that the Curly Plaintiffs' reading of Section 26(a) is the only reasonable and plausible reading of the statute.

Section 26(a) is divided into two subsections. Subsection 1 states that voters are entitled to cast absentee ballots before an absentee voter board "in the office of the circuit court clerk (or board of elections and registration in a county subject to IC 3–6–5.2)." I.C. § 3–11–10–26(a)(1). Subsection 2 then distinguishes the offices of the clerk and board of elections from "satellite office[s] established under section 26.3." I.C. § 3–11–10–26(a)(2). The plain meaning of the statute, then, is that neither an office of the "circuit court clerk" nor an office of the "board of elections and registration" is a satellite office. Indeed, it is clear that the statute is written in the alternative and that a "satellite office" is any office *other than* an office of the circuit court clerk or the office of the Board of Elections.

That conclusion is supported by the plain text of Section 26.3, which discusses satellite offices. Specifically, Section 26.3 distinguishes absentee voting in satellite offices from absentee voting in the office of the circuit court clerk. The statute provides that, if a county election board passes a resolution to establish satellite offices, "the procedure for casting an absentee ballot at a satellite office must, except as provided in this section, be substantially the same as the procedure for casting an absentee ballot in the office of the circuit court clerk." I.C. § 3–11–10–26.3(e). That language unambiguously treats satellite offices as a distinct alternative to an office of the circuit court clerk. Accordingly, the Board did not clearly violate the statute in doing the same.

**"The Office of the Circuit Court Clerk"**

We next note that the Curley Plaintiffs refer to the circuit court clerk and the "superior court clerks" as if there were more than one clerk, which misstates the law. Indiana Code Section 33–32–1–1 states that " 'clerk' means the clerk of the circuit court." Indiana Code Section 33–32–2–1 adds: "In a county having one (1) or more superior courts ..., the clerk shall serve as clerk of the superior ... court as well as clerk of the circuit court." And "Ind. Trial Rule 77 requires the clerk of the circuit court to maintain records 'for all circuit, superior, county, probate and municipal courts in the county' ...." *Bostic v. House of James, Inc.,* 784 N.E.2d 509, 512 (Ind.Ct.App.2003), *trans. denied.*

While the Lake Circuit Court sits in Crown Point, the circuit court clerk maintains an office in each of four separate courthouse locations: Gary, Hammond, East Chicago, and Crown Point. The Curley Plaintiffs' reference to "the single office of the circuit court clerk and all of the offices of the superior court clerks" is a mischaracterization. *See* Appellant's Brief at 30. Regardless of the court or the courthouse location, there is only one clerk

for all the courts in Lake County: the circuit court clerk. *See* I.C. §§ 33–32–1–1, 33–32–2–1. Thus, when Section 26 provides for absentee voting "in the office of the circuit court clerk," that statutory authorization encompasses all of the offices maintained by the clerk of the circuit court. In this respect, the fact that Lake County's one clerk operates from four locations makes Lake County unique among Indiana's ninety-two counties.

On this point, the Curley Plaintiffs also suggest that Section 26's use of the singular term "office" rather than "offices" is somehow dispositive. Again, Section 26 states that "a voter is entitled to cast an absentee ballot ... in the office of the circuit court clerk." For the General Assembly to have written "in the offices of the circuit court clerk" would suggest that a voter is entitled to cast multiple absentee ballots, which is absurd. It is true that the General Assembly could have written the law in all plurals (e.g., "voters are entitled to cast absentee ballots ... in the offices of the circuit court clerk"). But under our rules governing the construction of statutes, "[w]ords importing the singular number only may also be applied to the plural of persons and things." I.C. § 1–1–4–1(3). And it is clear from the text of Section 26(a)(2) and Section 26.3, where the terms "satellite office" and "satellite offices" are both used, that the General Assembly made no distinction between the singular and plural.

Again, the trial court found that "early voting in the 2008 General Election is being conducted in the offices of the Clerk of the Lake Circuit and Superior Court in the courthouse buildings in Gary, Hammond, and East Chicago." Appellant's App. at 36. We conclude that the evidence supports this finding and that this finding supports the trial court's conclusion that "[t]he Board of Elections by majority vote

did establish absentee voting in the office of the circuit court clerk...." *Id.* at 47. The trial court held, in effect, that the office of the circuit court clerk is not a satellite office under either Section 26 or Section 26.3. Neither the Board nor the trial court clearly misinterpreted the statutes in determining that the offices of the circuit court clerk are not satellite offices. Therefore, Section 26.3(b) is not implicated, and a unanimous vote by the Board of Elections is not required to establish in-person absentee voting when that voting takes place in an office of the circuit court clerk.

### Section 26(a)(1)

The Curley Plaintiffs also contend that Section 26 means—and can only mean—that "[e]ach county is required to provide one site where voters can cast an absentee ballot in person before the election," and that "[i]n a county subject to I.C. 3–6–5.2, which includes Lake County, that statutory site is the office of the board." Appellant's Brief at 22. But in interpreting a statute, we must consider not only what the statute says but what it does not say. *See State v. Dugan*, 793 N.E.2d 1034, 1036 (Ind.2003). "[T]he rights of the parties are to be determined not by what the legislature might well have done, but by what it has actually done." *Davis v. Elliott*, 7 Ind.App. 246, 248, 34 N.E. 591, 591 (Ind.Ct.App.1893). The statute does not include the words "one site" or "statutory site" or "mandatory site." *See* Appellant's Brief at 24.

The Curley Plaintiffs contend that the parenthetical in Section 26(a)(1), which reads "(or board of elections and registration in a county subject to IC 3–6–5.2)," can *only* be understood as a limitation that excludes "the office of the circuit court clerk" as a location for early voting. *See* I.C. § 3–11–10–26(a)(1). But the "or" within the parenthetical can just as easily

be read, as a coordinating conjunction, to mean that, in a county subject to Indiana Code Chapter 3–6–5.2, early voting may occur in either the office of the circuit court clerk or in the office of the Board of Elections. In other words, the parenthetical can been read to supplement, rather than to restrict, the absentee voting options available to the Board. *See, e.g.,* W. Strunk, Jr. & E.B. White, *The Elements of Style* 3, ¶ 3, http://www.irit.fr/rjcihm04/ Papers/Strunk & White.Elements.Style.pdf (last visited Oct. 30, 2008); http://www.test yourenglish.net/english-online/subjects/ coordinatingc.html ("A coordinating conjunction is a single word that joins words, phrases, and clauses of equal grammatical construction.") (last visited Oct. 30, 2008).

Alternatively, as counsel for the Board noted at oral argument, Section 26, which states that "a voter is entitled to cast an absentee ballot," can be interpreted not as a mere authorization but a command. That is, the statute can reasonably be said to require the Board to provide early voting at the offices of the clerk, the office of the Board, or both. Under that interpretation, the Board's vote to open the offices of the circuit court clerk in Gary, Hammond, and East Chicago to early voting may have been unnecessary.

And finally, the Curley Plaintiffs' suggested interpretation of Section 26 gives two different meanings to the word "or." That is, the Curley Plaintiffs would have this court read the "or" in Section 26(a)(1) that separates "the office of the circuit court clerk" from the office of the Board in the disjunctive such that only one of those two locations is allowed for early voting. But the Curley Plaintiffs would then have us read the "or" separating Section 26(a)(1) from Section 26(a)(2) in the conjunctive such that both the office of the Board and satellite offices are permissible for early voting. Indeed, the Curley

Plaintiffs advocated that early voting under Section 26(a)(2) is in addition to early voting under Section 26(a)(1). We decline to give the same word two meanings in the same section by interpreting one "or" as "or" and another as "and."

The Board's interpretation of Section 26(a)(1) is also reasonable because it is consistent with the Board's discretion over local election decisions. Specifically, Indiana Code Section 3–6–5.2–6 describes the "[p]owers of the board" and is in *pari materia* with Section 26(a)(1). *See, e.g., Horseman v. Keller,* 841 N.E.2d 164, 168 (Ind.2006) ("Where two statutes address the same subject, they are in *pari materia,* and we strive to harmonize them where possible.") (quoting *Freeman v. State,* 658 N.E.2d 68, 70 (Ind.1995)). It is undisputed that Lake County is a county subject to Indiana Code Chapter 3–6–5.2 and, as such, that the Board of Elections has assumed the election law powers of the circuit court clerk. *See* I.C. § 3–6–5.2–6 ("The board has all the powers and duties given ... to the following: ... (3) The circuit court clerk."). But that does not mean, as the Curley Plaintiffs contend under their interpretation of Section 26(a)(1), that the Board of Elections cannot conduct the election in "the office of the circuit court clerk." Indeed, to adopt the Curley Plaintiffs' reasoning would be to say that the Board has "all the powers and duties" of the clerk, but not the power to designate the clerk's office as a location for early voting. There is no such restriction to be found either in the early voting statutes or the statutes describing the Board's powers. The Curley Plaintiffs do not dispute that the clerk would have the power to use its offices for in-person absentee voting; thus, it cannot be said that the Board does not have the same power. If the clerk can do it, so can the Board. *See id.*

We also cannot agree with the State's contention as amicus curiae that in order to interpret Section 26 as the trial court did it would be necessary to restore power vested in the Board under Section 3–6–5.2–6 to the circuit court clerk. Section 26 is not concerned with the allocation of power to conduct elections as between the clerk and the Board. Rather, Section 26 provides that "the voter is entitled to cast an absentee ballot," and our interpretation does not strip the Board of any authority. We emphasize that the fact the Board conducts early voting in the clerk's office does not mean that the Board has surrendered its exclusive authority to conduct the election under Indiana Code Chapter 3–6–5.2.

In sum, we do not hesitate to conclude that the meaning of these critical statutory provisions are subject to more than one reasonable and plausible interpretation and are, therefore, ambiguous. As such, we conclude that the Board and the trial court have reasonably interpreted Section 26(a)(1). Given the ambiguity in the statute, it cannot be said, as a matter of law, that the Board exceeded its authority when it designated the office of the circuit court clerk as a location for in-person absentee voting. Accordingly, the Curley Plaintiffs have not demonstrated that the activity they seek to enjoin is clearly unlawful, and the per se rule, upon which they rely in this appeal, does not apply.

### III: The Public Interest

 Finally, even if the Curley Plaintiffs could demonstrate that the Board clearly violated the law, or that they have established the other requirements for a preliminary injunction, the public interest weighs heavily on the side of the Board's decision and the preliminary injunction. The interpretation of Sections 26 and 26.3, as applied to the facts in this case, presents questions of first impression for this court. But our opinion is guided by a long line of Indiana Supreme Court precedent on election law.

The right to vote is an inherent right of citizenship. While the State can set reasonable limitations on voter qualifications and on the manner, time, and place in which votes are cast, the courts must proceed with caution where the right to vote is challenged. The law favors the franchise and enfranchisement.

> Since the Legislature has extended the privilege to certain voters who may be absent from their voting places on election day, to cast their ballots, even though absent from the polling place, the same effort must be made to extend to them an opportunity to freely and fairly cast their ballots and to prevent their disfranchisement as is made to protect the ballots and prevent the disfranchisement of those voters who are present at their voting place and cast their vote in person.

*Grzeskowiak*, 230 Ind. at 130, 101 N.E.2d at 647.

 "The purpose of [election] law and the efforts of the court are to secure to the elector an opportunity to freely and fairly cast his ballot, and to uphold the will of the electorate and prevent disenfranchisement." *State ex rel. Harry v. Ice*, 207 Ind. 65, 71, 191 N.E. 155, 157 (1934). "To disfranchise [voters] because of a mere irregularity or a mistaken construction of the law by a party committee or election commissioner would defeat the very purpose of all election laws." *Lumm v. Simpson*, 207 Ind. 680, 684, 194 N.E. 341, 342 (1935). Further:

> It is the voter himself who has the right. These officers might be punished for what they did, but the voter has a right to have his vote counted. The right of the voter is paramount and the neglect of the election officers or even their

fraud should not be allowed to deprive the voter of his important right and duty as a citizen to cast his vote and have it counted as cast. Any other rule would, to a dangerous extent, leave the results of elections in the hands of the election officers, when the intention of the statute is to promote the exercise of free government by all of the lawful voters of the country, and not to leave it in the hands of the officers selected under the law to serve them.

*McArtor v. State,* 196 Ind. 460, 468, 148 N.E. 477, 479 (1925). 27

Despite those long-standing principles guiding the interpretation of Indiana election law, the Curley Plaintiffs seek[8] to terminate the opportunity for voting early based on nothing more than "a mistaken construction of the law." *See Lumm,* 194 N.E. at 342. The outcome the Curley Plaintiffs seek is contrary to the public interest. *See id.* Accordingly, even if the Curley Plaintiffs should ultimately prevail on the merits of their complaint, we are required to affirm the preliminary injunction.

### CONCLUSION

The Board's conclusion that an office of the circuit court clerk is not a satellite office for purposes of in-person absentee voting is not clearly unlawful. *See* I.C. §§ 3–11–10–26, 3–11–10–26.3. The Board of Elections did not clearly misinterpret the law when, in exercising its general authority over local elections, it provided for early voting in the offices of the clerk. *See* I.C. §§ 3–6–5.2–6, 3–11–10–26. In sum, we hold that the Board did not clearly violate the law when it authorized in-person absentee voting in offices of the circuit court clerk in Gary, Hammond, and East Chicago.

Thus, the trial court did not abuse its discretion, and its order was not clearly erroneous, when the court granted the preliminary injunction prohibiting the Board from terminating early voting in the circuit court clerk's offices in those locations. It was reasonable for the court to conclude that the office of the circuit court clerk is not equivalent to a temporary satellite voting site selected by the Board under Section 26.3, such as a school, church, or library, but is instead a permanent absentee voting location specifically identified in the statute. And the public interest in exercising the right to vote unquestionably weighs heavily on the side of the Board's decision to open these early voting locations, especially when the Curley Plaintiffs have wholly failed to show that they have been harmed in any way. As such, the Curley Plaintiffs are unable to satisfy the demands of the per se rule, and they have not demonstrated that the trial court clearly abused its discretion in granting injunctive relief under the standard four-prong test. *Walgreen,* 769 N.E.2d at 169.

Under our standard of appellate review in an appeal from the grant of a preliminary injunction, we conclude that the trial court did not abuse its discretion and that the trial court's determination is not clearly erroneous. The court's findings are supported in the record, and the judgment is supported by the findings. Accordingly, we affirm the preliminary injunction.

---

**8.** Neither the Curley Plaintiffs nor the State in its amicus brief seeks to nullify the early votes already cast at the offices of the circuit court clerk under the preliminary injunction, first entered by the Lake Circuit Court, continued by the October 14, 2008, Amended Order of our Supreme Court, and continued to date by the Lake Superior Court in its Order of October 22, 2008.

Affirmed and remanded for proceedings not inconsistent with this opinion.

MAY, J., and ROBB, J., concur.