**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 23 2013, 5:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**DALE S. COFFEY**
Boren Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEY FOR APPELLEES:

**MATTHEW A. GRIFFITH**
Griffith Law Group, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| REGINALD L. MCCRACKEN and BOWAR DEVELOPMENT, LLC, | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 55A04-1301-CC-39 |
| | ) | |
| JOSEPH HUBER, TONY THOMA, RONALD COX, CURTISS WALL, JERRY MCCRACKEN, STEVE DONITZEN, JOHN DOWELL, PHIL CAGLE, CRAIG PRICE, BOB HOOSER, JOHN WHALEN, CATHY CARTER, HUGO LOEFFLER, BRIAN DAYHUFF, MIKE ARNOLD, and DAVE DUNBAR, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE MORGAN CIRCUIT COURT
The Honorable Mark A. Smith, Special Judge
Cause No. 55C01-1007-CC-672

**October 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Reginald McCracken ("McCracken") and Bowar Development, LLC ("the Developer") bring this interlocutory appeal from the trial court's order granting a preliminary injunction to Joseph Huber, Tony Thoma, Ronald Cox, Curtiss Wall, Jerry McCracken, Steve Donitzen, John Dowell, Phil Cagle, Craig Price, Bob Hooser, John Whalen, Cathy Carter, Hugo Loeffler, Brian Dayhuff, Mike Arnold, and Dave Dunbar (collectively, "the Homeowners"). McCracken and the Developer raise two issues for our review:

1. Whether the trial court erred when it interpreted the Covenants, Conditions, and Restrictions for The Woodlands at McCracken Creek ("the Covenants").

2. Whether McCracken is entitled to vote at the meetings of the Homeowners' Association at The Woodlands at McCracken Creek ("the "HOA").

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

In 2001, McCracken owned certain real estate in Morgan County that is now known as The Woodlands at McCracken Creek ("the Neighborhood"). McCracken also owned and controlled the Developer, which developed the real estate into the Neighborhood. McCracken and the Developer intended to develop the Neighborhood in three phases: Phase I, Phase II, and Phase III. But they only developed the Neighborhood under Phase

---

[1] In his reply brief and in a separate motion to strike, McCracken objects to several of the Homeowners' statements and arguments in the Appellees' Brief. McCracken's request to strike these statements and arguments is well taken and, by separate order issued contemporaneously with today's decision, we grant his motion to strike. However, we will not ignore the record in our own review of this appeal.

I, and, on December 10, 2007, the Developer was administratively dissolved. The Homeowners are lot owners in the developed area of the Neighborhood. No progress has been made in developing the Neighborhood under Phase II or Phase III.

Pursuant to the Covenants, in February of 2009 McCracken established the HOA as a nonprofit corporation and named himself its officer and director. However, McCracken failed to schedule all required meetings, held meetings that were scheduled in the early afternoons on weekdays, did not collect HOA dues, and did not use the HOA to provide for the maintenance and care of the Neighborhood. As such, several of the Homeowners took it upon themselves to maintain parts of the Neighborhood. In particular, the Homeowners mowed and landscaped the entryway to the Neighborhood and hired vehicles to remove snow from the Neighborhood's roads. The Homeowners shared these expenses.

On February 5, 2010, the Homeowners filed a complaint for damages or injunctive relief against McCracken and the Developer, which they followed with a motion for a preliminary injunction on November 8, 2012. Specifically, in their motion for a preliminary injunction the Homeowners sought to enjoin McCracken from exercising the authority of the HOA; to remove him and any other officers and directors from their positions; to allow the Homeowners to schedule a new meeting of the HOA to elect new officers and directors; and to bar McCracken from voting at future meetings of the HOA. The trial court held a hearing on the Homeowners' motion on December 13, 2012.

On December 31, the court granted the Homeowners' request and entered the following findings of fact:

3

21. Pursuant to Section 20 of the Covenants, the Developer was required to form [the HOA] with powers and responsibilities described in the Covenants, which association was formed on February 19, 2009[,] under the name [of the HOA,] an Indiana non-profit corporation.

22. On or about January 15, 2002, the HOA's By-Laws were adopted.[2]

23. The Covenants and By-Laws apply only to the lots that are identified and described in the approved and recorded plat.

24. The only plat, and thus the only lots, subject to the Covenants and By-Laws are [sic] The Plat of The Woodlands [a]t McCracken Creek, Section One, approved on December 17, 2001, and recorded on January 15, 2002.

25. No other plats have been recorded or approved and there are no other Lots or Lot Owners other than the Lot Owners of the recorded and approved Plat.

26. The Neighborhood consists of only 24 Lots. No other land, parcels of land, or lots are a part of the Neighborhood.

27. There are only 24 Lot Owners with membership rights in the HOA.

28. Pursuant to Section 2 of the By-Laws, there are two (2) classes of membership [in the HOA, each] with different voting rights.

29. Section 2 of the By-Laws defines "Class A" members as Lot Owners and "Class B" members as the Developer.

30. Pursuant to Section 2 of the By-Laws, Class B membership converts to Class A on the Applicable Date, which is defined as January 1, 2012.

31. As of the date of the [Homeowners'] Motion for Preliminary Injunction, the Applicable Date had passed, and all Class B members may only exercise Class A membership rights if that person is an owner of a Lot under the recorded and approved Plat.

32. Pursuant to Section 2 of the By[-L]aws, Developer is entitled to one (1) vote as a Class A member for every lot that Developer owns.

---

2 The trial court incorrectly referred to the By-Laws as those of the HOA; in fact, they are the By-Laws of the Neighborhood. Appellants' App. at 235.

4

33.    Developer no longer owns any lots and is no longer entitled to cast any votes [as a Lot Owner].

34.    Developer is entitled to one (1) Class A membership vote for every parcel of land shown upon the recorded subdivision plat that is not identified as a lot.  Currently, this would include the two (2) triangular-shaped parcels of land identified as "A" and "B[," which constitute the entryway into the Neighborhood].

35.    Sections 18 and 19 of the Covenants require the HOA to maintain and hold legal title to any land under the Plat that is not separately defined as a Lot.

36.    Pursuant to Sections 18 and 19 of the Covenants, Developer should have transferred titles for parcels "A" and "B" to the HOA on or before the Applicable Date.[3]

37.    Developer is not entitled to exercise votes as an owner of the triangular-shaped parcels "A" and "B."

38.    Defendants own no Lots and, therefore, are no longer voting members of the HOA.

39.    Defendants have failed to schedule and hold regular annual meetings of the HOA, despite their control of the HOA.

Appellants' App. at 287-290 (emphases added).  The court then enjoined McCracken and the Developer (hereinafter referred to collectively as "McCracken" unless otherwise specified) from scheduling any future meetings of the HOA; instructed the Homeowners to schedule a special meeting of the HOA with an agenda to remove all current directors and officers, elect new directors and officers, and schedule the next annual meeting of the HOA; enjoined McCracken from voting at the special meeting; and ordered McCracken to

_____

[3] Section 19 of the Covenants actually provides that "Ownership of the Common Area shall be conveyed to the Association upon their completion." Appellants' App. at 82. The "Applicable Date" is referred to in Section 2 of the By-Laws and is the date on which Class B membership would cease. Id. at 236.

5

transfer title to parcels A and B to the HOA on or before the date the HOA holds its special meeting. This interlocutory appeal as of right ensued.[4]

## DISCUSSION AND DECISION

### Standard of Review

McCracken appeals the trial court's grant of a preliminary injunction to the Homeowners. To obtain a preliminary injunction, the Homeowners had the burden of showing by a preponderance of the evidence that: (1) their remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) they had at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to them outweighed the potential harm to McCracken resulting from the granting of an injunction; and (4) the public interest would not be disserved by the granting of a preliminary injunction. Curley v. Lake Cnty. Bd. of Elections & Registration, 896 N.E.2d 24, 32-33 (Ind. Ct. App. 2008), trans. denied

In granting the Homeowners' request for a preliminary injunction, the trial court entered findings of fact and conclusions thereon as required by Indiana Trial Rule 52. Our standard of review is clear:

> when reviewing findings of fact and conclusions [thereon] entered upon . . . a motion for preliminary injunction pursuant to Trial Rule 52(A)(1), we must determine if the trial court's findings support its judgment and will reverse the judgment only when clearly erroneous. Findings of fact are clearly erroneous only when the record lacks any evidence or reasonable inferences therefrom to support them. The trial court's judgment is clearly erroneous only if it is unsupported by the findings and the conclusions that rely upon those findings. We may neither reweigh the evidence nor reassess witness

---

[4] The court stayed further proceedings pending this interlocutory appeal, and we reject the Homeowners' request that we vacate the trial court's order to stay further proceedings.

6

credibility.  Additionally, even an erroneous finding is not fatal to a trial court's judgment if the remaining valid findings and conclusions support the judgment, rendering the erroneous finding superfluous and harmless as a matter of law.

Furthermore, [the appellants are] appealing from a negative judgment and must, therefore, establish that the trial court's judgment is contrary to law.  A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court.  We review conclusions of law de novo and give no deference to the trial court's determinations about such questions.

Id. at 32 (citations and quotations omitted).  It is also well established that our review of a trial court's judgment under Trial Rule 52(A) permits this court to "affirm the judgment on any legal theory supported by the findings."  Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind. 1998).

Further, a question of contract interpretation "is a pure question of law and is reviewed de novo."  Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 251 (Ind. 2005).  If the contract's terms are clear and unambiguous, courts must give those terms their plain and ordinary meaning.  Id.  Courts should interpret a contract by looking to the contract as a whole and harmonizing its provisions rather than placing them in conflict.  Id. at 252.  However, if a contract is ambiguous, its meaning may be determined by extrinsic evidence.  See City of Indianapolis v. Kahlo, 938 N.E.2d 734, 744 (Ind. Ct. App. 2010), trans. denied.

Here, McCracken does not challenge the facts underlying the trial court's order on the Homeowners' request for a preliminary injunction.  Rather, McCracken challenges only the trial court's interpretation of the Covenants and By-Laws, which are contracts between McCracken and the Homeowners.  In particular, McCracken contends that the trial court

7

misinterpreted the language of the Covenants when the court determined that McCracken must convey title to parcels A and B to the HOA and that the court misinterpreted the language of the By-Laws when it concluded that McCracken had no voting rights at the HOA special meeting. We address each issue in turn.

**Issue One: Whether McCracken is the
Proper Title Holder to Parcels A and B**

McCracken first contends that, under the Covenants, he is the proper title holder to parcels A and B, which constitute the entryway into the Neighborhood. In ruling against McCracken on this issue, the trial court relied on the following sections of the Covenants:

Section 18. Landscaping and Lot Maintenance.

* * *

C. Entryway and Common Areas. <u>Landscaping in the Entryway and Common Areas shall be landscaped and maintained by Developer and thereafter maintained by the [HOA].</u>

* * *

Section 19. Common Area Ownership. <u>Phase I of the Development will not have Common Areas, however, [sic] Common Areas shall be added in Phases II and III.</u> Common Areas shall be the area so designated in the recorded Plat of the Development, and is sometimes herein, and in the By-Laws of the [HOA,] referred to as "Common Area" . . . . Any Common Area depicted on the recorded Plat of the Development shall remain private and neither the Developer's execution of, or recording of the Plat, nor the doing of any other act by Developer is, or is intended to be[,] a dedication to the public of the Common Area. <u>Ownership of the Common Area shall be conveyed to the [HOA] in fee simple title, free of financial encumbrances to the [HOA,] upon their completion.</u> Such conveyance shall be subject to the easements and restrictions of record and such other conditions as Developer at the time of conveyance deems appropriate. Such conveyance shall be deemed to have been accepted by the [HOA], and those persons who shall be members thereof from time to time, by this acceptance of their respective deeds and conveyance.

8

> Developer shall be responsible for improving and/or maintaining all Common Areas until same shall be conveyed to the [HOA] at which time the [HOA] shall be responsible for the maintenance and repair of the Common Areas.

Appellants' App. at 133-35 (emphases added). Again, according to the trial court:

> 35.    Sections 18 and 19 of the Covenants require the HOA to maintain and hold legal title to any land under the Plat that is not separately defined as a Lot.
>
> 36.    Pursuant to Sections 18 and 19 of the Covenants, Developer should have transferred titles for parcels "A" and "B" to the HOA on or before the Applicable Date.[5]

Id. at 290.

The Covenants define neither "Entryway" nor "Common Area." However, it is clear from the whole of the Covenants that the common area consists of real estate designated for the use of all Lot Owners and that, upon the Developer's completion of a given common area, the Developer was required to convey title to that common area to the HOA. Upon the conveyance of title, the HOA would then become responsible for the maintenance and repair of that common area.

The essential question here is whether the entryway, which includes parcels A and B, is common area. On this point the Covenants are ambiguous. On the one hand, Section 19 of the Covenants states that Phase I of the development, in which the entryway was completed, "will not have Common Areas" and that "Common Areas shall be the area so designated in the recorded Plat of the Development . . . as 'Common Area.'" Id. at 134.

---

[5] See footnote 3, supra.

9

The recorded plat for Phase I refers to parcels A and B as "A" and "B," not as "Common Area." Id. at 231.

However, Section 18(C) of the Covenants states that the "Entryway and Common Areas" will be created and initially landscaped and maintained by the Developer, but thereafter landscaped and maintained by the HOA. Id. at 134. This is similar to how Section 19 separately describes common areas, which are to be created by the Developer but then conveyed to and maintained by the HOA. This parallel structure between Section 18(C) and Section 19 suggests that the entryway was intended by the parties to be common area that would be first developed by the Developer but then conveyed to the HOA for future maintenance. And the phrase "Entryway" implies common ownership.

In light of the Covenants' ambiguity with respect to whether the entryway is common area, we turn to extrinsic evidence for clarification. See, e.g., Kahlo, 938 N.E.2d at 744. At the hearing on the Homeowners' motion for a preliminary injunction, Homeowner Ronald Cox testified that the Homeowners would mow the entryway, without financial or other assistance from McCracken, "to maintain the appearance of the [N]eighborhood." Transcript at 18, 21. Cox further testified that he believed the Covenants created common areas in Phase I, which he identified as "the two triangular pieces at the entrance of the [N]eighborhood," and that their designation as "A" and "B" in the recorded plat, rather than with a number, evidenced this intent. Id. at 50, 55-56. Exhibit 8 is a photograph of the entryway. This photograph shows that the entryway was used for signage at the entrance to the Neighborhood, which serves the interests of all the Lot Owners as well as the public. Finally, on cross-examination the Homeowners' attorney

10

asked McCracken what he was "going to do with A and B." Id. at 75. McCracken replied that, "[a]fter phases two and three are completed, . . . I would . . . assign title over to the [HOA]." Id.

These facts demonstrate that the entryway was intended to be a type of "Common Area" under the Covenants despite Section 19's proclamation that no common areas were to be created during Phase I of the development. The entryway was created to serve the interests of all of the Lot Owners, and, after its creation, responsibility for maintenance of the entryway was immediately placed on the Lot Owners. And McCracken himself acknowledged that, at some point, he would have to convey title to parcel A and parcel B to the HOA as if those parcels were common area.

Accordingly, in light of the ambiguity in the Covenants and the extrinsic evidence most favorable to the trial court's judgment, we must conclude that the entryway, which consists of parcels A and B, is common area. As common area, the Developer was obliged under Section 19 to convey title to the parcels constituting the entryway to the HOA upon their completion. The Developer did not do so, and instead it conveyed title to McCracken personally. The Developer had no legal authority to convey title to parcels A and B to McCracken, and McCracken has no legal authority to continue to hold title to those parcels. Thus, we affirm the trial court's decision to compel McCracken to promptly convey title to those two parcels to the HOA.

### Issue Two: McCracken's Voting Rights

McCracken also asserts that he is entitled to vote at the special meeting of the HOA. But this argument is premised on McCracken's theory that he properly holds title to parcels

11

A and B.  As explained above, McCracken's theory is incorrect.  Accordingly, we affirm the trial court's judgment that McCracken is not entitled to vote at the special meeting of the HOA.

Affirmed.

MATHIAS, J., and BROWN, J., concur.