# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**ROBERT J. GABRIELSE**
DeMotte, Indiana

**SEAN E. KENYON**
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

**VICTOR L. MOLDOVAN**
McGuire Woods LLP
Atlanta, Georgia

ATTORNEY FOR APPELLEE:

**DONALD W. SHELMON**
Rensselaer, Indiana



FILED
Sep 10 2014, 9:03 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PINNACLE HEALTHCARE, LLC, and PATRICK J. SHEETS, M.D., INC., | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 37A04-1401-CT-39 |
| | ) | |
| PATRICK J. SHEETS, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE JASPER CIRCUIT COURT
The Honorable John D. Potter, Judge
Cause No. 37C01-1312-CT-906

**September 10, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Pinnacle Healthcare, LLC ("Pinnacle"), and Patrick J. Sheets, M.D., Inc. ("the Practice") (collectively, "the Appellants") bring this interlocutory appeal from the trial court's denial of their motion for a preliminary injunction against Dr. Patrick J. Sheets, which sought to enjoin Dr. Sheets from violating or continuing to violate contractual noncompete, nonsolicitation, and nondisparagement clauses. The Appellants raise three issues for our review, which we restate as whether the trial court's denial of their motion for a preliminary injunction is clearly erroneous.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

For about ten years prior to July 28, 2011, Dr. Sheets owned the Practice in Rensselaer, from which he practiced medicine. On July 28, 2011, he sold the Practice to Pinnacle for $275,000. The transaction was a stock sale in which Pinnacle acquired 100% of the stock in the Practice from Dr. Sheets. Dr. Sheets became an employee of Pinnacle in the Practice under a separate employment agreement, the execution of which was a condition of the purchase agreement.[1] See Appellants' App. at A218.

Pursuant to the employment agreement, Dr. Sheets agreed to the following provisions:

> 8. TERMINATION BY EMPLOYEE. If Employer violates any material part of this Agreement, then Employee may terminate employment for cause upon thirty (30) days written notice to Employer and any [and] all non-compete and liquidated damages provisions, as provided in [Paragraphs] 9 and 10 of this Agreement, will not be in effect and Employee will not be bound by the same.

---

[1] Because Dr. Sheets owned the building in which the Practice was located, he and Pinnacle also entered into a lease agreement. But that agreement is not relevant to this appeal.

2

9.    NON-COMPETE, NON-SOLICITATION AND NON-DISPARAGEMENT.  During his employment with Employer and for a period of two (2) years after termination or expiration of this Agreement, the undersigned will not practice medicine, directly or indirectly, own, manage, operate, control, participate in, be employed by or be connected in any manner with the ownership, management, operation, or control of any business similar to the type of business conducted by Employer, including but not limited to any hospital, Employee group, doctor, ambulatory surgery center, imaging center, insurance company, home health care service provider, physical therapy provider, durable medical equipment provider, diagnostic center (lab infusion center, sleep lab, etc.) or any other health care service provider within twenty five (25) miles of the office in which Employee practices in Rensselaer, Indiana.  Employee agrees that said geographical area approximates the area from which Employer attracts a substantial number of patients.[2]  During his employment with Employer and for a period of two (2) years after termination or expiration of this Agreement, the undersigned will not invite or encourage any patient of Employer or a member of such patient's family to obtain Employee's services from sources other than Employer.

10.    NON-SOLICITATION.  During the term of this Agreement and for two (2) years thereafter, representative agrees not to solicit or encourage any employee or independent contractor of the Employer to leave the Employer or to devote less than all of such employee or contractor's efforts to the Employer.

11.    NON-DISPARAGEMENT.  During the term of this Agreement and after the termination of this Agreement, the Employee agrees not to voice, write, espouse, or publicize directly or indirectly any negative comments regarding the Employer, or its member, its affiliates, its medical services and practice, its independent contractors and employees, or the Employer's business practices.

12.    LIQUIDATED DAMAGES.  Should Employee's employment terminate and Employee continues to practice in the geographical area described in Paragraph 9, he understands that doing so will adversely affect Employer's practice.  Therefore, Employee agrees to pay to Employer as

---

[2]  The purpose of this sentence of the noncompete clause is unclear.  Insofar as it demonstrates the employee's assent to the terms of the contract, this sentence is redundant with the employee's execution of the contract.  And insofar as this language is an attempt to estop the employee from challenging the reasonableness of the noncompete clause, this language is ineffective.  "To be enforceable, a noncompetition agreement must be reasonable . . . as to the time, activity, and geographic area restricted," and "the reasonableness of a noncompetition agreement is a question of law."  Cent. Ind. Podiatry, P.C. v. Krueger, 882 N.E.2d 723, 729 (Ind. 2008).

liquidated damages and not as a penalty an amount equal to the payments received by the Employee to date from Employer relative to the purchase of stock in the Corporation pursuant to Stock Purchase Agreement of even date herewith, to which reference is hereby made, if Employee practices medicine, as described in Paragraph 9, in said geographical area during the duration of this Agreement or during the two (2) years subsequent to the termination of this Agreement . . . .

Id. at A345-46 (emphases removed).

On December 3, 2013, Dr. Sheets informed Pinnacle that he was terminating his employment pursuant to Paragraph 8 for cause based on Pinnacle's alleged failure to pay him money owed under the employment agreement. That same day, Dr. Sheets filed his complaint for damages, and he requested both a temporary restraining order and a preliminary injunction to prohibit Pinnacle from enforcing or attempting to enforce Paragraphs 9 and 10 of the employment agreement. Later that day, the trial court entered a temporary restraining order against Pinnacle and set a hearing on the request for a preliminary injunction on December 13.

At the hearing, Dr. Sheets testified that, over the course of his thirteen years of medical practice in Rensselaer, he had treated 1700 patients. Dr. Sheets further testified that he oversaw another 135 patients at three separate nursing homes, each of which was within twenty-file miles of the Practice. And Dr. Sheets testified that there are no other doctors to take care of those 135 patients if he is unavailable. Margaret Lindsay, a nurse at Jasper County Hospital, testified that, within the last three years, the number of doctors practicing family medicine in Rensselaer had dropped from fifteen to five, which she described as "a shortage of medical care, of doctors, currently practicing in the Rensselaer community." Tr. at 86. On December 18, the court entered an order in which

4

it dissolved the temporary restraining order and denied Dr. Sheets' motion for a preliminary injunction, stating that Dr. Sheets' "remedies at law are adequate." Appellants' App. at A167.

In early January of 2014, before the Appellants had filed their answer to Dr. Sheets' complaint, the Appellants allege that they learned that Dr. Sheets had begun to operate a competing medical practice in the same building as the Practice. The Appellants further allege that they learned that Dr. Sheets had been treating former patients at his new practice. On January 13, the Appellants filed their answer, affirmative defenses, and counter-claims, together with a motion for a preliminary injunction and request for an emergency hearing. In particular, the Appellants requested a preliminary injunction to enjoin Dr. Sheets:

> 1. From practicing medicine, directly or indirectly, owning, managing or participating in any business engaged in the practice of medicine or providing treatment or medical services to patients in any geographic location within a 25-mile radius of the Practice . . . .
>
> 2. From soliciting any employee of the Practice or any of the Practice's independent contractors to leave the Practice or to devote less than all of such employee's or contractor's efforts to the Practice; and/or
>
> 3. From disparaging the Practice orally, in writing, or by publicizing, directly or indirectly, any negative comments regarding the [Appellants], their practices, their members, affiliates, medical services, practice, employees, and/or independent contractors.

Id. at A262. That is, the Appellants sought to enforce Paragraphs 9, 10, and 11 of the employment agreement.

The next day, without a hearing or other submissions, the trial court denied the Appellants' motion for a preliminary injunction. In its order, the court stated as follows:

5

Pursuant to Trial Rule 65(A)(2),[3] all evidence heard on [the first] petition for preliminary injunction becomes part of the record of the case, and this Court takes judicial notice of that evidence in issuing this order.

Pinnacle may show a likelihood of success at trial . . . and can argue that its remedies at law are inadequate—although a breach of a contract case is often remedied by damages at law. On the second factor [regarding whether the remedies at law are inadequate], however, harm to Pinnacle is financial and a potential market share loss. Pinnacle is a physicians group and hospital in Crown Point, a separate geographical area from Rensselaer. It bought the [P]ractice, accounts, patients, names, etc. of Sheets—lock, stock and barrel—in 2011, thus creating a Pinnacle presence in Rensselaer, Sheets. That purchase was an investment, and it is arguable that damages are an adequate remedy at law.

The third factor [regarding whether the threatened harm to the Appellants outweighs the harm of an injunction against Dr. Sheets] is a balancing test requiring an evidentiary hearing; however, the scope of the requested injunction to prohibit speech by Dr. Sheet[s'] attorney that might be disparaging is too burdensome for this Court. Counsel's zealous advocacy is a cherished and protected right—statements made in court and litigation are not actionable even if defamatory. The fourth prong, the public interest would not be disserved, is a standard that cannot be met. The evidence already heard and presented by both sides suggests that Rensselaer is underserved by doctors. Federal law potentially weighs in on this issue—the Patient Affordable Care Act, and interim federal regulations implementing the act, contain a Patient Bill of Rights guaranteeing patients their choice of doctors. Although there has been a paucity of reported decisions regarding the effect of the Affordable Care Act and its corresponding regulatory Patient Bill of Rights on noncompete clauses, the proper focus at this time is whether the extreme equitable remedy of an injunction prohibiting Dr. Sheets from practicing medicine in Rensselaer prior to a full trial on the merits should be entered and how that would affect the public interest.

Id. at A7-8. The court then recited a two-page long block quote from an opinion of the

Supreme Court of Tennessee, Murfreesboro Medical Clinic, P.A. v. Udom, 166 S.W.3d

674 (Tenn. 2005), after which the trial court concluded that "a preliminary

---

[3] In relevant part, Trial Rule 65(A)(2) provides that "any evidence received upon an application for a preliminary injunction which would be admissible upon the trial on the merits becomes part of the record on the trial and need not be repeated upon the trial."

6

injunction . . . is too great a burden against the public interest to impose prior to a full and fair trial on the merits." Appellants' App. at A10. The court then denied the Appellants' motion for a preliminary injunction. This interlocutory appeal as of right followed.[4]

## DISCUSSION AND DECISION

The Appellants challenge the trial court's denial of their motion for a preliminary injunction. To obtain a preliminary injunction, they had the burden of showing by a preponderance of the evidence that: (1) their remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) they had at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to them outweighed the potential harm to Dr. Sheets that would result from the granting of an injunction; and (4) the public interest would not be disserved by the granting of a preliminary injunction. Curley v. Lake Cnty. Bd. of Elections and Registration, 896 N.E.2d 24, 32-33 (Ind. Ct. App. 2008), trans. denied.

Pursuant to Indiana Trial Rule 52, "in granting or refusing preliminary injunctions" the trial court "shall make special findings of fact without request." "Findings are clearly erroneous if they are insufficient to disclose a valid basis for the legal result reached in judgment." Fumo v. Med. Group of Mich. City, Inc., 590 N.E.2d 1103, 1108 (Ind. Ct. App. 1992), trans. denied. Findings are also clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. Buffkin v. Glacier Group, 997 N.E.2d 1, 9 (Ind. Ct. App. 2013). And a judgment is

---

[4] This appeal is authorized by Indiana Appellate Rule 14(A)(5).

clearly erroneous if it is unsupported by the findings and the conclusions that rely on those findings. Curley, 896 N.E.2d at 32 (quotations omitted).

Further, here the Appellants are appealing from a negative judgment and must, therefore, establish that the trial court's judgment is contrary to law. A judgment is contrary to law only if "the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court." Id. (quotations omitted). We address the trial court's findings of fact and conclusions thereon with respect to each of the four requirements for a preliminary injunction in turn.

Whether the Appellants' Remedies at Law Were Inadequate

The trial court's findings are insufficient to disclose a valid basis for its conclusion that Appellants' remedies at law are either adequate or inadequate. The court found that Appellants "can argue that [their] remedies at law are inadequate" but also found that "it is arguable that damages are an adequate remedy at law." Appellants App. at A7. These findings that a position can be argued and that the contrary position can also be argued do not point to a conclusion. And neither do the trial court's findings that "harm to Pinnacle is financial" and that Pinnacle's purchase of the Practice "was an investment" indicate, without more, whether the Appellants' remedies at law are adequate. See id.

Moreover, the trial court's assessment of this factor appears to address only the noncompete clause as applied between Pinnacle, located in Crown Point, and Dr. Sheets. The trial court did not consider the independent claim of the Practice, located in Rensselaer, to enjoin Dr. Sheets under the noncompete clause, nor did the court in any

8

way assess whether the Appellants' remedies at law were inadequate with respect to their request to enjoin Dr. Sheets under the nonsolicitation and nondisparagement clauses. Thus, the trial court's apparent finding that the Appellants' remedies at law were not inadequate is clearly erroneous.

Because this issue will likely recur on remand, we briefly consider Dr. Sheets' argument that the liquidated damages clause preempts the Appellants' request for injunctive relief. As we have explained:

> A typical liquidated damages provision provides for the forfeiture of a stated sum of money upon breach without proof of damages. <u>Liquidated damages provisions are generally enforceable where the nature of the agreement is such that when a breach occurs the resulting damages would be uncertain and difficult to ascertain.</u> However, the stipulated sum will not be allowed as liquidated damages unless it may fairly be allowed as compensation for the breach.

Patel v. United Inns, Inc., 887 N.E.2d 139, 150 (Ind. Ct. App. 2008) (emphasis added; quotations omitted); see also Beiser v. Kerr, 107 Ind. App. 1, 20 N.E.2d 666, 668-69 (1939) ("Where an agreement is for the performance or nonperformance of only one act, and there is no adequate means of ascertaining the precise damage which may result from a violation, the parties may . . . fix . . . the amount of compensation payable by the defaulting party . . . .").

Similar to liquidated damages, injunctive relief may be appropriate when it will protect a nonbreaching party from uncertain damages or ongoing contractual violations. As we have thoroughly explained in a context similar to that in the instant appeal:

> In this case, the parties' agreement both provided for liquidated damages and . . . contemplated an injunction. The trial court concluded that the liquidated damages clause provides [the employer] with an adequate remedy, but money damages and injunctive relief serve different purposes.

9

> The liquidated damage clause was intended to quantify the cost for violations of the agreement after-the-fact, while the injunctive remedy was meant to prevent future violations of the agreement. Thus, we agree with [employer] that, "[t]he [liquidated] damage clause was intended to operate in tandem with an injunction not instead of it."
>
> Further, the right to injunctive relief is not contingent upon the text of the agreement. It has long been the law in Indiana that an action seeking an injunction lies in equity and is, therefore, derived from the common law. . . . The liquidated damages clause in the parties' agreement does not obviate [the employer's] right to injunctive relief.
>
> . . . Although mere economic injury generally does not warrant the grant of a preliminary injunction, the trial court has a duty to determine whether the legal remedy is as full and adequate as the equitable remedy. A legal remedy is adequate only where it is as plain and complete and adequate—or, in other words, as practical and efficient to the ends of justice and its prompt administration—as the remedy in equity. <u>A legal remedy is not adequate merely because it exists as an alternative to an equitable form of relief.</u>

<u>Washel v. Bryant</u>, 770 N.E.2d 902, 906-07 (Ind. Ct. App. 2002) (emphasis added; footnote and citations omitted; some alterations original). And as our supreme court has succinctly stated: "Indiana law clearly recognizes that contracts not to compete are especially adapted to liquidated damages provisions." <u>Raymundo v. Hammond Clinic Ass'n</u>, 449 N.E.2d 276, 283 (Ind. 1983) (discussing <u>Beiser</u>, 20 N.E.2d at 669-70).

Here, pursuant to Paragraph 12 of the employment agreement, in the event that Dr. Sheets were to violate the noncompete clause the parties agreed to liquidated damages for a sum certain, namely, $275,000, the amount Pinnacle paid for the Practice. This amount makes sense as an estimate of damages because Pinnacle paid not just for the tangible property of the Practice but also for Dr. Sheets' personal good will. If Dr. Sheets opens an office nearby, the good will that the community associates with his name will follow him, and the value of Pinnacle's purchase will likely suffer. Thus, the liquidated

10

damages clause here places Pinnacle in the position it occupied before it executed the purchase agreement.

But the liquidated damages clause does not require that Pinnacle acquiesce in the alleged breach of the contract, see Nat'l Advertising Co. v. Wilson Auto Parts, Inc., 569 N.E.2d 997, 1001 (Ind. Ct. App. 1991), and injunctive relief may be especially appropriate to protect Pinnacle from the loss of the personal good will that it purchased. As in Washel, an "either-or approach" between a legal remedy under the liquidated damages clause and an injunctive remedy to protect the noncompete clause "would deprive [the employer] of the benefit of [the employee's] covenant not to compete. Nowhere does the agreement state or imply that liquidated damages shall be the exclusive remedy." 770 N.E.2d at 906. And the existence of the liquidated damages clause is not an admission of the adequacy of a legal remedy; rather, it is an acknowledgement that a complete assessment of money damages following a breach "would be uncertain and difficult to ascertain."[5] Patel, 887 N.E.2d at 150.

Again, "a legal remedy is not adequate merely because it exists as an alternative to an equitable form of relief." Washel, 770 N.E.2d at 907. Here, the remedy provided to the Appellants by the liquidated damages clause is, at most, an alternative to equitable

---

[5] Although not cited by Dr. Sheets in his brief on appeal, in Ed Bertholet & Associates, Inc. v. Stefanko, 690 N.E.2d 361, 364 (Ind. Ct. App. 1998), we stated that the employer had "failed to show that its remedies at law would be inadequate" because the employment contract contained a liquidated damages provision that required the employee to pay 15% of any bonds he wrote while in violation of the covenant not to compete. Thus, we concluded that the employer had "set an adequate monetary remedy in the liquidated damages provision," and an adequate remedy at law existed. Id. However, in Washel we recognized that this language from Stefanko was dicta. Washel, 770 N.E.2d at 908. We agree with our assessment in Washel and likewise agree that Stefanko "is not precedent on this issue." Id.; see also Robert's Hair Designers, Inc. v. Pearson, 780 N.E.2d 858, 867 n.2 (Ind. Ct. App. 2002) (declining to follow Stefanko as dicta and not precedent).

relief. The Appellants are not obliged to relinquish the benefit of the bargain they received through the noncompete clause and only to pursue damages. Rather, they may seek injunctive relief to hold Dr. Sheets to the contract.

Reasonable Likelihood of Success at Trial

Second, the trial court did not sufficiently address whether the Appellants had at least a reasonable likelihood of success at trial by establishing a prima facie case for the alleged violations of Paragraphs 9, 10, and 11. Rather, on this factor the court merely stated that "Pinnacle may show a likelihood of success at trial." Id. This is not sufficient.[6] The trial court's apparent finding is inadequate and, thus, is clearly erroneous.

Whether the Threatened Injury to the Appellants
Outweighed the Potential Harm to Dr. Sheets that
Would Result from Granting the Injunction

We next consider the trial court's findings with respect to whether the threatened injury to the Appellants on each of the three alleged violations outweighed the potential harm to Dr. Sheets that would have resulted from granting an injunction. On this factor, the court's only statement was to criticize the breadth of the nondisparagement clause as interfering with the judicial process and Dr. Sheets' legal representation. But this concern does not address the merits of a preliminary injunction with respect to the noncompete clause, the nonsolicitation clause, or, for that matter, the nondisparagement clause as applied exclusively to Dr. Sheets outside of the judicial process. As such, the

---

[6] In his brief on appeal, Dr. Sheets asserts that he is likely to win on the merits of his claim that the Appellants breached the employment agreement and, therefore, any attempt by the Appellants to enjoin him is ineffective pursuant to Paragraph 8 of the employment agreement. But it is not this court's place to determine in the first instance which party has a reasonable likelihood of success at trial. As such, we need not consider this argument.

12

trial court's finding with respect to the third factor does not disclose a valid basis for its judgment, and it is clearly erroneous.

## Public Interest

Finally, we consider the court's assessment of whether the public interest would be disserved if the Appellants' request for a preliminary injunction were granted. The trial court apparently concluded that this factor alone weighed so heavily in favor of Dr. Sheets that the other three factors, discussed above, were secondary. The trial court's judgment on this issue is clearly erroneous for two reasons.

First, the trial court's assessment of whether the public interest would be disserved by the grant of a preliminary injunction was limited to the Appellants' request under the noncompete clause. The trial court did not consider the Appellants' request for injunctive relief under the nonsolicitation and nondisparagement clauses. The court's findings are inadequate and do not disclose a valid basis for its judgment based on this factor.

Second, in considering this factor with respect to the noncompete clause, the trial court relied exclusively on the reasoning of the Supreme Court of Tennessee in Udom. But the Indiana Supreme Court has expressly rejected that authority as a matter of Indiana law. Cent. Ind. Podiatry, P.C. v. Krueger, 882 N.E.2d 723, 727-28 (Ind. 2008). Indeed, in Krueger the court noted that Udom is no longer even good law in Tennessee, as it has been superseded by statute. Id. at 728 (citing Tenn. Code Ann. § 63-1-148). Further, the trial court's rationale suggests that noncompetition agreements against physicians are per se unreasonable if they either deprive a community of important medical services or if they deny patients the opportunity to choose their own medical

13

provider. The first rationale was expressly rejected by the Indiana Supreme Court more than thirty years ago in Raymundo, 449 N.E.2d at 279. The second rationale was expressly rejected by the court in Krueger, 882 N.E.2d at 727-28. Thus, the trial court's judgment is contrary to law.

Conclusion

In sum, the trial court's judgment denying the Appellants' motion for a preliminary injunction is clearly erroneous. The trial court's findings do not disclose a valid basis for its judgment with respect to any of the four requirements for a preliminary injunction. Further, the trial court's assessment of the public interest and its reliance on Udom are contrary to Indiana law.

Accordingly, we reverse the trial court's denial of the Appellants' motion for a preliminary injunction, and we remand with instructions for the court to hold a hearing on the Appellants' motion pursuant to Indiana Trial Rule 65. While the court may consider the evidence presented at the December 13, 2013, hearing on Dr. Sheets' motion pursuant to Indiana Trial Rule 65(A)(2), as the court itself recognized in its order on the Appellants' motion a hearing is required at least on the Appellants' new allegations. See Appellants' App. at A7. Hence, on remand, the court shall hold a hearing on the Appellants' motion and, thereafter, the court shall enter a judgment on the Appellants' motion that is not inconsistent with this opinion.

Reversed and remanded with instructions.

BAILEY, J., and PYLE, J., concur.