

**FILED**

Feb 25 2016, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Kim E. Ferraro | Mark Small |
| Hoosier Environmental Council | Indianapolis, Indiana |
| Valparaiso, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gary Bowling and Mable Bowling, | February 25, 2016 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 70A05-1502-CT-72 |
| v. | Appeal from the Rush Superior Court |
| Christopher Nicholson and Shelley Nicholson, | The Honorable Matthew R. Cox, Special Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 70D01-1310-CT-448 |

**Altice, Judge.**

## Case Summary

[1]     Gary and Mable Bowling (the Bowlings) appeal from the trial court's denial of their motion for a preliminary injunction against Christopher and Shelley Nicholson (the Nicholsons).  The Bowlings present five issues for our review, which we restate as follows:  Did the trial court err in denying the Bowlings' motion for preliminary injunction?

We reverse and remand.

## Facts & Procedural History

The Bowlings moved into their current home, which sits on 2.6 acres in rural St. Paul, Indiana, in 1995. The Nicholsons purchased over four acres of land adjacent to and south of the Bowlings' property in 2004. The Nicholsons removed a trailer that had been on their property and built a house. For the first six years, the Nicholsons used a central heating system. In June 2010, the Nicholsons installed an outdoor hydronic heater, commonly referred to as an outdoor wood boiler (OWB),[1] to heat their home. The Nicholsons claim that the OWB has reduced their electric heating bill by two to three hundred dollars per month.

The Bowlings claim that plumes of thick, acrid smoke, noxious odors, and air particulates from the Nicholsons' OWB often invade their property and significantly interfere with their use and enjoyment thereof. The Bowlings

---

[1] An OWB differs from woodstoves and other residential wood-fired combustion devices in that they are manufactured without emission control devices, employ lower combustion temperatures, and have higher fuel loading capacity. As a result, OWBs can create heavy smoke, are significantly more polluting than other home-heating devices, and can pose public health risks especially when they are used improperly. OWBs are also designed differently, employing a lower stack height that can result in more intense smoking and smoking conditions closer to the ground.

Prior to the Nicholsons' purchase and installation of their OWB, an Environmental Protection Agency (EPA) certification program for OWBs had been developed and implemented. In 2010, there were more than a dozen OWB models that had been qualified by the EPA. An OWB that is qualified by the EPA is ninety percent cleaner, i.e., less polluting, than models that are unqualified. The model installed by the Nicholsons, a Woodmaster 4400, has not been qualified by the EPA. Notwithstanding the lack of EPA qualification, suppliers can sell the Woodmaster 4400 so long as it was in their inventory prior to May 2011, the effective date of an EPA rule prohibiting the installation of unqualified OWBs.

describe the conditions as unbearable at times. As a result, the Bowlings assert that they find it difficult to work in the yard. The Bowlings testified that they have had to seal their windows and keep their doors closed. The Bowlings submitted affidavits from friends and family who had experienced the conditions described by the Bowlings when they had visited the Bowlings' home. The Bowlings maintain that some of their friends and family refuse to visit them because of the air conditions in and around their home.

Mable also testified that she has asthma and described how the smoke from the Nicholsons' OWB aggravates her condition such that she has recurrent episodes of bronchitis characterized by a cough, wheezing and shortness of breath, pleuritic pain, scratchy throat, fatigue, hoarseness, sinus pressure, and nasal congestion. Mable asserts that the smoke from the OWB has sickened her to the point where she has had to go the hospital for breathing treatments and has to take medicines to manage her symptoms. The Bowlings acknowledge that they are not claiming damages arising from medical conditions, but nevertheless assert that such evidence further demonstrates the conditions that they claim are affecting their use and enjoyment of their property.

Since the Nicholsons moved onto the adjacent property, and increasingly after their installation of the OWB, the Bowlings have contacted law enforcement and the fire department to complain about some of the Nicholsons' behaviors, including, as relevant here, the operation of their OWB. Specifically, Mable contacted the Rush County police authorities approximately 197 times and also caused the local fire department to be dispatched nearly 60 times to the

Nicholsons' home. After installation of the OWB, the Bowlings started contacting the Indiana Department of Environmental Management (IDEM), other state and local agencies, and various government officials to complain about the Nicholsons' use of their OWB. IDEM and other government agencies performed numerous surveillance inspections when the Nicholsons were operating their OWB and conducted several unannounced inspections of the OWB. Only one violation was ever recorded, and the Nicholsons admitted that it was their error to put cardboard in the OWB.

[7] On October 29, 2013, the Bowlings filed their Verified Complaint for Preliminary and Permanent Injunctive Relief (the Complaint) against the Nicholsons. The Complaint set forth four counts: nuisance, trespass, negligence, and gross negligence. On November 15, 2013, the Bowlings filed their Motion for Preliminary Injunction seeking to enjoin the Nicholsons from using their OWB during the pendency of this litigation. In support of their motion, the Bowlings presented twenty-four exhibits, including affidavits by Mable Bowling, Mable's physician, and friends and family of the Bowlings, along with photographs and videos relating to the Nicholsons' operation of their OWB. The Bowlings also presented testimony from Alan Leston, an environmental consultant and expert on air quality control.[2]

---

[2] Leston admitted that he had not inspected the property at issue and that he had not personally observed operation of the Nicholsons' OWB.

[8]     The Nicholsons sought and were granted several continuances. On January 8, 2014, the Nicholsons filed their answer, a motion to dismiss, and a motion to strike. On the same day, the Nicholsons filed an Ind. Trial Rule 35 request for the Bowlings to produce their medical records from the previous fifteen years, claiming that the Bowlings had "place[d] their medical conditions directly at issue." *Appellant's Appendix* at 155. By way of the motion, the Nicholsons also sought to continue a hearing set in January. The Bowlings objected to the T.R. 35 motion, stating, in relevant part:

> 3. More importantly, however, [the Nicholsons] are not entitled to any of [the Bowlings'] medical records for several reasons. First, and contrary to [the Nicholsons'] assertion, [the Bowlings] <u>are not</u> seeking damages for any medical harm or personal injury in this case. Specifically, this lawsuit was brought under Ind. Code § 32-30-6-6, for [the Bowlings'] property-related nuisance claims. Second, [the Bowlings'] preliminary injunction motion . . . is not seeking damages, but, instead, equitable relief to prevent the [Nicholsons] from using their OWB pending trial in this case.

*Id*. at 158-59 (footnote omitted).[3] A hearing on the Bowlings' motion was finally held on October 14, 2014. On January 30, 2015, the trial court entered its order denying the Bowlings' motion for a preliminary injunction. The Bowlings now appeal.

## Discussion & Decision

---

[3] The trial court never ruled on the request for medical records.

[9] The Bowlings challenge the trial court's denial of their preliminary injunction. The issuance of a preliminary injunction is within the sound discretion of the trial court, and the scope of appellate review is limited to deciding whether there has been a clear abuse of discretion. *Barlow v. Sipes*, 744 N.E.2d 1, 5 (Ind. Ct. App. 2001), *trans. denied*. Pursuant to Ind. Trial Rule 52, "in granting or refusing preliminary injunctions" the trial court "shall make special findings of fact without request." "Findings are clearly erroneous if they are insufficient to disclose a valid basis for the legal result reached in the judgment." *Fumo v. Med. Group of Mich. City, Inc.*, 590 N.E.2d 1103, 1108 (Ind. Ct. App. 1992), *trans. denied*. Findings are also clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. *Buffkin v. Glacier Group*, 997 N.E.2d 1, 9 (Ind. Ct. App. 2013). And a judgment is clearly erroneous if it is unsupported by the findings and the conclusions that rely on those findings. *Curley v. Lake Cnty. Bd. of Elections & Registration*, 896 N.E.2d 24, 32 (Ind. Ct. App. 2008) (quotations omitted), *trans. denied*. The power to issue a preliminary injunction should be used sparingly, and such relief should not be granted except in rare instances in which the law and facts are clearly within the moving party's favor. *Buffkin*, 997 N.E.2d at 9.

[10] To obtain a preliminary injunction, the Bowlings had the burden of showing by a preponderance of the evidence that: (1) their remedies at law were inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) they had at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) the threatened injury to them outweighed the

potential harm to the Nicholsons that would result from the granting of an injunction; and (4) the public interest would not be disserved by the granting of a preliminary injunction. *See Pinnacle Healthcare, LLC v. Sheets*, 17 N.E.3d 947, 953 (Ind. Ct. App. 2014). Because the Bowlings are appealing from a negative judgment, they must, therefore, establish that the trial court's judgment is contrary to law. *Id*. A judgment is contrary to law only if "the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court." *Id*. (quotations omitted).

[11] With regard to the first requirement for a preliminary injunction, the Bowlings claim the trial court improperly construed and applied the standard for a showing of irreparable harm. To establish irreparable harm, the Bowlings were required to show that the harm they suffered "cannot be compensated for through damages upon resolution of the underlying action." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 912 (Ind. Ct. App. 2011).

[12] Throughout their pleadings, the Bowlings consistently alleged that the Nicholsons' operation of their OWB constitutes a nuisance. Indeed, in objecting to the discovery request for their medical records, the Bowlings specifically asserted that they were not seeking damages for medical harm or personal injury, but rather, their action was for "property-related nuisance claims." *Id*. at 159. Nuisance is defined by Ind. Code § 32-30-6-6, which provides: "Whatever is (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property so as essentially to

interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." The Bowlings presented evidence to establish that operation of the OWB was offensive to the senses and/or an obstruction to their free use of their property. The harm they allege relates in large part to the loss of use and enjoyment of their property.

[13] The trial court, in concluding that the Bowlings had not established irreparable harm, indicated that it considered harm only as it related to a property loss in the form of loss of property value or physical damage to the Bowlings' property.[4] The trial court's findings and conclusions, however, do not address the elements of the Bowlings' underlying nuisance claim. Specifically, the trial court did not address the Bowlings' evidence or claims as they related to operation of the OWB as offensive to the senses or as an obstruction to the free use of their property such that its continued use interferes with the Bowlings' enjoyment of their property. The Bowlings' nuisance claim was not based on a loss of property value or physical damage. We agree with the Bowlings that the trial court's findings and conclusions fail to address the element of irreparable harm in light of the Bowlings' underlying nuisance claims.

---

[4] In *Muehlman v. Keilman*, 272 N.E.2d 591, 594 (1971), this court rejected such a narrow property loss standard in a case upholding a preliminary injunction to abate a nuisance arising solely from noise. The court noted that the nuisance statute then in effect, like the one in effect currently, does not mention actual damage to property as a requirement thereof. Thus, the court concluded that "no actual damage to property need be shown." *Id*. "If dust, dirt, smoke and offensive odors essentially interfered with the comfortable enjoyment of the house . . . the action might be maintained, although not a penny's value of injury was done to the house itself." *Id*. (quoting *Owen v. Phillips*, 73 Ind. 284, 293 (1881)).

[14] Next, the Bowlings argue that the trial court failed to assess their likelihood of success on the merits of their nuisance claim. To obtain a preliminary injunction, the party seeking the injunction must have a reasonable likelihood of prevailing on the merits. *See Pinnacle Healthcare, LLC v. Sheets*, 17 N.E.3d at 953. To demonstrate this element, the moving party is not required to show that he is entitled to relief as a matter of law, but only that success on the merits is probable. *See Avemco Ins. Co. v. State ex rel. McCarty*, 812 N.E.2d 108, 118 (Ind. Ct. App. 2004). Thus, for purposes of seeking a preliminary injunction, the Bowlings need only have shown that the Nicholsons' use of their OWB is likely to be deemed a nuisance under I.C. § 32-30-6-6.

[15] Here, the trial court's conclusion of law that comes closest to making a determination regarding the Bowlings' likelihood of success provides:

> A review of the case law regarding Preliminary Injunctions finds that most of them relate to covenants not to compete, contract law, or breaches of trade secrets. None of the available cases refers to a neighbor seeking to stop another from using his/her property to its full advantage based upon a perceived but unproven irreparable harm to property.

*Appellants' Appendix* at 14. First, as noted above, the trial court did not apply the proper standard in considering the issue of irreparable harm in light of the Bowlings' nuisance claim. Second, the trial court's statement that "most" of the cases it reviewed did not concern a nuisance claim is not dispositive of

whether a preliminary injunction is warranted in this case.[5] *Appellants' Appendix* at 14. The trial court's conclusion in this regard falls short of assessing the likelihood of success of the Bowlings' nuisance claim.

[16] As to the third element, we agree with the Bowlings that the trial court did not properly apply the "balance of harms" factor. The court concluded that the Bowlings "admitted they had no photographs of any alleged damages to the property nor any analysis or other form of documentation which would provide the Court with sufficient information with which to formulate an assessment of any property harm." *Id*. However, as discussed above, the harm alleged by the Bowlings as part of their nuisance claim is the loss of use and enjoyment of their property, which is based upon an environmental condition alleged to have been created by the Nicholsons' operation of their OWB. It is this harm that must be balanced against the harm to the Nicholsons, which is in the nature of higher electric heating bills. In its findings and conclusions, the trial court did not summarize or even acknowledge the Bowlings' evidence in this regard. In fact, on the Bowlings' side of the balancing analysis, the trial court relied upon its mistaken determination that the harm to be considered is actual harm to the property. On remand, the trial court must balance the proper harms so as to protect the property and rights of the parties.

---

[5] Indeed, Indiana's nuisance statute has been found to be applicable under circumstances where noxious odors and emissions interfered with a neighboring landowner's comfortable use of his property. *See Stickdorn v. Zook*, 957 N.E.2d 1014 (Ind. Ct. App. 2011). There is no case law that prohibits the granting of a preliminary injunction to abate a nuisance.

[17]    Finally, the Bowlings assert that the trial court applied the wrong standard with respect to the public interest element of a preliminary injunction. The trial court concluded:

> The Court is hard pressed to find how granting an injunction based upon the facts as presented serves the greater public. If a homeowner follows the law and regulations and despite constant contact with governing bodies no error is found, an injunction under those circumstances would cause a negative effect on the public's right to quiet enjoyment of their own property.

*Id.* at 14. Whether the public interest is disserved is a question of law for the court to determine from all the circumstances. *Robert's Hair Designers, Inc., v. Pearson*, 780 N.E.2d 858, 868-69 (Ind. Ct. App. 2002).

[18]    Here, there are competing interests – the Bowlings' right to quietly enjoy their own property and the Nicholsons' right to operate their OWB on their property. The competing interests identified give rise to a private nuisance claim, which arises when it has been demonstrated that one party has used his property to the detriment of the use and enjoyment of another's property. *See Woodsmall v. Lost Creek Twp. Conservation Club, Inc.*, 933 N.E.2d 899, 903 (Ind. Ct. App. 2010), *trans. denied.* Contrary to the trial court's conclusion, however, the fact that the Nicholsons' operation of their OWB does not violate the law or regulations is not dispositive of whether a preliminary injunction would disserve the public interest. To hold such would bar injunctive relief in all cases of nuisance *per accidens*, i.e., where an otherwise lawful use may become a nuisance by virtue of

the circumstances surrounding the use.[6] *Id*. Thus, the trial court's conclusion with respect to the public interest element is clearly erroneous in that it is based solely on the fact that the Nicholsons' operation of the OWB has not violated any laws or regulations.

[19] In summary, we conclude that the trial court's conclusions are either based on an incorrect standard or on the mistaken conclusion that the alleged harm was in the form of loss of property value or physical damage. The conclusions of law are therefore clearly erroneous and cannot support the court's decision to deny the Bowlings' motion for a preliminary injunction. We therefore reverse the trial court's order and remand with instructions to reconsider the matter in light of the above discussion.

[20] Judgment reversed and remanded.

Robb, J. and Barnes, J., concur.

---

[6] For example, in *Muehlman,* 272 N.E.2d at 598, neighboring landowners were enjoined from starting, idling, and revving their trucks during normal sleeping hours because of the noise and odors created thereby. Although not illegal, the court determined that such conduct constituted a nuisance and thereby affirmed the grant of a temporary injunction. *Id*. In another case, the legal operation of a livestock operation, i.e., a hog feedlot, created certain conditions in the form of a pungent odor and infestation of flies and rats that were found to constitute a nuisance to the neighboring landowner. *Yeager & Sullivan, Inc. v. O'Neill*, 324 N.E.2d 846, 853 (Ind. Ct. app. 1975).