## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 18 2018, 9:02 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
| --- | --- |
| Christopher T. Smith | Robert W. Summerfield |
| Smith Davis LLC | GDS Law Group, LLP |
| Greenfield, Indiana | Anderson, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
| --- | --- |
| Bryan Rutledge and BLC Outdoor Services, | December 18, 2018 |
| *Appellants-Defendants,* | Court of Appeals Case No. 18A-PL-1573 |
| v. | Appeal from the Madison Circuit Court |
| | The Honorable David A. Happe, Judge |
| Travis Forrest, | Trial Court Cause No. 48C04-1802-PL-32 |
| *Appellee-Plaintiff* | |

**Crone, Judge.**

## Case Summary

[1]     Bryan Rutledge and BLC Outdoor Services appeal the order granting Travis

Forrest's motion for a preliminary injunction and finding Rutledge in contempt

of a temporary restraining order ("the TRO"). Rutledge argues that the trial court erred in issuing a preliminary injunction because the trial court's finding that Forrest's remedies at law are inadequate is clearly erroneous. We agree and therefore reverse the preliminary injunction. Rutledge also argues that the trial court abused its discretion in finding that he was in contempt of the TRO because the TRO was insufficiently clear and certain. Concluding that it was sufficiently clear and certain, we find no abuse of discretion and accordingly affirm the contempt finding. We remand for further proceedings.

## Facts and Procedural History

[2] Rutledge owns a mowing and landscaping company registered as Rutledge Enterprises, which does business as BLC Outdoor Services. Forrest also owns a mowing and landscaping company known as All Seasons Lawn Care. In late January or early February of 2018, Rutledge and Forrest began negotiations for Rutledge to purchase Forrest's landscaping business. The potential agreement included Rutledge's purchase of over $100,000 of Forrest's equipment and Rutledge hiring Forrest in a salaried position. Toward this end, the parties created and initialed two sheets of paper, titled "Equipment Prices," which list multiple pieces of equipment and their prices, a "Business Price" of $20,000, and a yearly salary amount. Ex. D. However, some prices are lined out, and there are some handwritten notations regarding dates Forrest had already worked for Rutledge and personal days Forrest had earned. *Id.* Apparently, the parties may have also discussed Rutledge's purchase of Forrest's client list and for Rutledge to pay the loans for a 2017 F350 Ford pickup truck and an Isuzu

landscape truck, but the Equipment Prices does not reflect these discussions. Rutledge gave Forrest a "good faith deposit of $10,000." Appellants' App. Vol. 2 at 8. Rutledge took possession of Forrest's equipment but did not pay Forrest any more money. Although Rutledge gave Forrest two additional checks for $10,000 each, Rutledge put a stop hold on those checks, and Forrest was unable to cash them. Tr. Vol. 3 at 64. When the deal fell through, Forrest unsuccessfully sought the return of the equipment he had transferred to Rutledge and offered to reimburse Rutledge for the $10,000 good faith deposit. *Id*. at 65.

[3] On February 23, 2018, Forrest filed a complaint against Rutledge, alleging civil conversion, pain and suffering, tortious interference with a business relationship, and intentional infliction of emotional distress. In his complaint, Forrest alleged that Rutledge had "invoiced [Forrest's] clients under his own business name, and ha[d] harassed several of them, in person, in an attempt to steal [Forrest's] clients." Appellants' App. Vol. 2 at 12. Forrest also filed a motion for a TRO, asking the trial court to order Rutledge not to use, sell, or in any way encumber any equipment owned by Forrest and not to have any further contact with any of Forrest's clients. On March 2, 2018, without holding a hearing, the trial court issued the TRO, which restrained Rutledge "from using, encumbering, concealing, selling or otherwise disposing of any equipment, property or other items received from [Forrest]" and "from contacting any clients of [Forrest] or his business in any capacity," and ordering

Rutledge to "immediately release the property of [Forrest] into his care." *Id*. at 7.

[4] On March 5, 2018, Deputy Gary Stanley of the Hancock County Sheriff's Office, other law enforcement personnel, and Forrest served the TRO on Rutledge. Rutledge turned over some property but refused to disclose the location of certain other property. Apparently, Rutledge returned Forrest's 2017 Ford F350 pickup truck, an Isuzu landscape truck, a 2017 PJ equipment trailer, a Boss snowplow, and two pallets of salt.[1] Law enforcement read the TRO to Rutledge multiple times and informed him that he could be held in contempt and put in jail for failure to comply, and Rutledge indicated that he understood but continued to refuse to disclose the location of all the equipment Forrest had transferred to him.

[5] On March 7, 2018, Deputy Stanley filed notice that the TRO had not been satisfied. At some point, Forrest purchased equipment to replace the equipment that Rutledge refused to return, so that Forrest could avoid losing customers and continue operating his business. *Id*. at 9. On April 12, 2018, Forrest filed a motion for rule to show cause why Rutledge should not be found in contempt for refusing to comply with the TRO.

---

[1] It is not entirely clear that Rutledge returned all this equipment to Forrest on this particular date, but apparently he had returned this equipment to Forrest by the time of the hearing on the preliminary injunction.

On April 13, 2018, the trial court held a hearing on Forrest's motion for rule to show cause and motion for a preliminary injunction. Forrest, Rutledge, and Deputy Stanley testified. On June 4, 2018, the trial court issued an order granting a preliminary injunction, finding Rutledge in contempt of the TRO, and awarding Forrest attorney's fees. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court's decision to grant the preliminary injunction is clearly erroneous.

Rutledge contends that the trial court erred in granting the preliminary injunction. When determining whether to grant or deny a preliminary injunction, the trial court is required to issue special findings of fact and conclusions thereon. *Thornton-Tomasetti Eng'rs v. Indianapolis-Marion Cty. Pub. Library*, 851 N.E.2d 1269, 1277 (Ind. Ct. App. 2006); Ind. Trial Rule 52(A). We review the special findings and conclusions for clear error. Ind. Trial Rule 52(A). "Findings are clearly erroneous if they are insufficient to disclose a valid basis for the legal result reached in the judgment." *Fumo v. Med. Group of Mich. City, Inc.*, 590 N.E.2d 1103, 1108 (Ind. Ct. App. 1992), *trans. denied*. "Findings are also clearly erroneous when the record lacks evidence or reasonable inferences from the evidence to support them. And a judgment is clearly erroneous if it is unsupported by the findings and the conclusions that rely on those findings." *Bowling v. Nicholson*, 51 N.E.3d 439, 443 (Ind. Ct. App. 2016) (citations omitted), *trans. denied*. In assessing whether the judgement is clearly erroneous, we will not reweigh the evidence or judge witness credibility but will

consider only the evidence favorable to the judgment and the reasonable inferences to be drawn therefrom. *Clark's Sales & Serv., Inc. v. Smith*, 4 N.E.3d 772, 780 (Ind. Ct. App. 2014), *trans. denied*.

[8]  Preliminary injunctions are designed to protect the property and rights of parties from any injury until the issues and equities in a case can be determined after a full examination and hearing. *Barlow v. Sipes*, 744 N.E.2d 1, 6-7 (Ind. Ct. App. 2001) (citing 42 AM. JUR. 2D, *Injunctions* § 13 (1969)), *trans. denied*. The power to issue a preliminary injunction should be used sparingly, with such relief granted only in rare instances in which the law and facts are clearly within the movant's favor. *Clark's*, 4 N.E.3d at 780. To obtain a preliminary injunction, the moving party has the burden of showing by a preponderance of the evidence that

> (1) the movant's remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action; (2) the movant has at least a reasonable likelihood of success at trial by establishing a prima facie case; (3) threatened injury to the movant outweighs the potential harm to the nonmoving party resulting from the granting of an injunction; and (4) the public interest would not be disserved.

*Apple Glen Crossing, LLC v. Trademark Retail, Inc.*, 784 N.E.2d 484, 487 (Ind. 2003). "Failure to prove any one of these requires denying the injunction." *Leone v. Comm'r, Ind. Bureau of Motor Vehicles*, 933 N.E.2d 1244, 1248 (Ind. 2010).

[9]    Rutledge argues that the trial court's finding that Forrest's remedies at law are inadequate is clearly erroneous.[2] We observe that "[i]f an adequate remedy at law exists, injunctive relief should not be granted. A party suffering mere economic injury is not entitled to injunctive relief because damages are sufficient to make the party whole." *Ind. Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 162 (Ind. 2002). However,

> [a]lthough mere economic injury generally does not warrant the grant of a preliminary injunction, the trial court has a duty to determine whether the legal remedy is as full and adequate as the equitable remedy. A legal remedy is not adequate merely because it exists as an alternative to an equitable from of relief. Instead, injunctive relief will be granted if it is more practicable, efficient, or adequate than that afforded by law. A legal remedy is adequate only where it is as plain, complete and adequate–or in other words, as practical and efficient to the ends of justice and its prompt administration–as the remedy in equity.

*Barlow*, 744 N.E.2d at 6-7 (citations and quotation marks omitted).

[10]    As to Forrest's remedies at law, the trial court found as follows:

---

[2] Rutledge also argues that the trial court's judgment is clearly erroneous because it did not include a finding that "irreparable harm" would occur to Forrest if the preliminary injunction were not granted. Appellants' Br. at 14. As mentioned, to obtain a preliminary injunction, the moving party must show that the movant's "remedies at law are inadequate, thus causing irreparable harm pending resolution of the substantive action." *Apple Glen Crossing*, 784 N.E.2d at 487. We observe that "irreparable harm" is harm that "cannot be compensated for through damages upon resolution of the underlying action." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 912 (Ind. Ct. App. 2011). This is essentially another way of articulating when the movant's remedies at law are inadequate. Here, the trial court found that Forrest's remedies at law are inadequate, and we decline to hold that the trial court was required to make an additional finding specifically referring to irreparable harm.

> The remedies at law are inadequate. For [Forrest] to have to carry the financial burden of purchasing all new equipment and not being able to mitigate that expenditure by either selling his old equipment or putting it into productive use would place his business at a competitive disadvantage compared to other competing landscaping contractors, including [Rutledge].

Appellants' App. Vol. 2 at 9. Rutledge contends that Forrest is able to continue operating his business because Forrest purchased new equipment to replace the equipment that had not been returned to him. Rutledge further argues that the trial court's finding is essentially an economic argument that Forrest would carry a financial burden from purchasing the new equipment, and there is no evidence that the financial burden would place Forrest's business at a competitive disadvantage.

[11] As the moving party, Forrest bore the burden of establishing that his remedies at law are inadequate, such that he would suffer irreparable harm. In his appellee's brief, Forrest fails to direct us to any evidence that he is currently unable to provide services to his clients or operate his business or is experiencing any difficulties in doing so due to the cost of purchasing new equipment. He points to no evidence that supports the trial court's finding that operating his business without the equipment in Rutledge's possession puts him at a competitive disadvantage.[3] The financial burden of operating his business without the equipment in Rutledge's possession is an economic injury. We

---

[3] The testimony Forrest relates in his appellee's brief is irrelevant and unsupported by citation to the record.

conclude that the trial court's finding that Forrest's remedies at law are inadequate is unsupported by sufficient evidence. Accordingly, the grant of the preliminary injunction is clearly erroneous, and we must reverse and remand for further proceedings.

[12] Rather than seeking an equitable remedy, Forrest could have pursued prejudgment possession of his property through statutory means. Indiana Code Chapter 32-35-2 governs actions for replevin and provides a proper legal mechanism for seeking an order for prejudgment possession of property.

## Section 2 – The trial court did not abuse its discretion in finding Rutledge in contempt of the TRO.

[13] Rutledge asserts that the trial court erred in finding him in contempt of the TRO because it was insufficiently clear and certain.[4] "The determination of whether a party is in contempt of court is a matter left to the discretion of the trial court." *City of Gary v. Major*, 822 N.E.2d 165, 171 (Ind. 2005). "We will

---

[4] Rutledge also argues that the trial court erred in issuing the TRO because the TRO violated Indiana Trial Rule 65(B) and because he did not receive proper notice. However, Rutledge did not object, demand a hearing, or seek to dissolve the TRO as permitted by Indiana Trial Rule 65(B). Therefore, Rutledge has waived any objection he may have had to the TRO process. *See Vickery v. Ardagh Glass Inc.*, 85 N.E.3d 852, 857 (Ind. Ct. App. 2017) (concluding that Vickery waived any objection he may have had to the TRO process, including the lack of legally sufficient notice, by failing to object, demand a hearing, or seek to dissolve the TRO), *trans. denied* (2018). Nevertheless,

> we caution attorneys and trial courts around the state to be mindful of the notice requirements surrounding TROs. There are circumstances in which a TRO must truly be granted immediately without affording time to the adverse party to respond, but those circumstances must strictly meet the requirements set forth by Trial Rule 65(B). In all other cases, both the applicant party and the trial court are required by due process and the trial rules to ensure that the adverse party was given legally sufficient notice before final action is taken.

*Id.* at 859.

reverse a trial court's finding of contempt only if there is no evidence or inference therefrom to support the finding." *Id*.

> In order to be held in contempt for failing to comply with a court order, a party must have willfully disobeyed the order. The order must have been so clear and certain that there could be no question as to what the party must do, or not do, and so there could be no question regarding whether the order is violated. A party may not be held in contempt for failing to comply with an ambiguous or indefinite order in good faith.

*Bandini v. Bandini*, 935 N.E.2d 253, 264-65 (Ind. Ct. App. 2010) (citations and quotation marks omitted).

[14] Rutledge argues that the TRO was subject to more than one interpretation, and therefore it was ambiguous.[5] According to Rutledge, one part of the TRO ordered him to restrain from "using, encumbering, concealing, selling or otherwise disposing of … *property* … *received from* [Forrest]" and another part ordered him to "immediately release the *property of* [Forrest] into his care." Appellants' App. Vol. 2 at 7 (emphases added). He contends that *property received from Forrest* and *the property of Forrest* are not synonymous, and that the TRO could be understood to mean that he was not required to release the

---

[5] We note that Rutledge is not arguing that he cannot be held in contempt for failing to comply with an erroneous order. Indeed, our case law firmly establishes that "a defendant may not challenge a contempt finding based upon the prior order's non-jurisdictional irregularities. A party must follow an erroneous order. The only remedy from an erroneous order is appeal and disobedience thereto is contempt." *City of Gary*, 822 N.E.2d at 169-70 (quoting *Carson v. Ross*, 509 N.E.2d. 239, 243 (Ind. Ct. App. 1987), *trans. denied* (1988)).

property that he believed he had validly purchased pursuant to a business agreement. We are unpersuaded.

[15] The record shows that Deputy Stanley testified that Rutledge was specifically informed what property to release, and Rutledge "advised that he was not going to disclose the location of certain property and would not turn it over." Tr. Vol. 3 at 27. Deputy Stanley also testified that Rutledge was informed that he was not complying with the TRO and that his unwillingness to comply would likely constitute some type of contempt, and Rutledge still refused to provide the location of the other property. *Id*. at 27-28. At the very least, by refusing to reveal the location of the property, Rutledge was "concealing … property … received from [Forrest]." Appellants' App. Vol. 2 at 7. We cannot say that the trial court abused its discretion in finding Rutledge in contempt of the TRO. Accordingly, we affirm the contempt finding.

[16] Affirmed in part, reversed in part, and remanded.

Vaidik, C.J., and Mathias, J., concur.